*192
 
 FADELEY, J.
 

 The trial court suppressed evidence seized from defendant’s automobile when police searched it without a warrant after they stopped it for a traffic infraction. On the state’s appeal of the suppression order, the Court of Appeals reversed on the ground that the “automobile exception” applied.
 
 State v. Herrin,
 
 123 Or App 117, 858 P2d 921 (1993). We reverse the decision of the Court of Appeals and affirm the trial court’s suppression order.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Shortly after midnight on August 24, 1991, Salem Police Officer Fuhrmann stopped defendant for driving with excessive muffler noise.
 
 See
 
 ORS 815.025 (describing infraction of causing unreasonable noise with a vehicle). Fuhr-mann asked for defendant’s license to drive. He responded that he did not have one. A second officer, Staples, arrived on the scene. Fuhrmann checked on defendant’s status by radio and learned that his driver license had been revoked as a habitual offender. Fuhrmann arrested defendant for felony driving while revoked, removed him from his automobile, patted him down for weapons, handcuffed him, and placed him in the back of the patrol car.
 

 Fuhrmann had stopped defendant’s automobile in a no-parking zone in a residential neighborhood near a railroad track. Consequently, the automobile had to be moved.
 

 The officers determined that the automobile was registered to someone other than defendant. Defendant told them, however, that he was buying the automobile.
 

 There were two female passengers riding in the front seat of the automobile with defendant. The passengers claimed no ownership interest in the automobile, but Fuhr-mann was considering releasing it to one of them. He therefore asked them for identification.
 

 The first passenger gave two names — one was not hers and the other was fictitious. Fuhrmann asked whether he could search her purse for identification. She responded, in effect, “[G]o ahead,” and poured the contents of her purse
 
 *193
 
 onto a small gray vinyl zippered case that was on the front seat next to her. Fuhrmann opened the gray case. It contained identification in the name of Nove, a lock of hair, and little clear plastic bindles of powder. Fuhrmann identified the powder as methamphetamine by using a field test. A records check disclosed two outstanding warrants for Nove’s arrest, one of which was for felony possession of a controlled substance. Nove was arrested on that warrant.
 

 Officer Staples talked to the second passenger. Although she initially lied about her identity, she later gave her name, Swanson. Staples obtained Swanson’s consent to search her purse. There he found numerous hypodermic syringes. A records check disclosed no outstanding warrants. Swanson was not arrested.
 

 The officers asked the passengers where they were going. They said that they were headed to a particular house that was nearby. Fuhrmann testified that police suspected that the house was a location of illegal methamphetamine activity.
 

 Fuhrmann testified that he believed that he probably would find more drugs in the automobile. He did not ask anyone for consent to search the automobile or its contents, however, nor was a warrant obtained. Fuhrmann unzipped a closed gray gym bag that was lying on the back seat, where he found more than a dozen needles. He had asked Nove whether the gym bag was hers, but she said that it was not. Fuhrmann also found an opaque plastic container, which he opened. In that container, Fuhrmann found a large amount of methamphetamine and a chemical agent used for drying it.
 

 The officers then opened the closed trunk of the automobile. They found a paper bag containing a receipt, dated the previous day, for chemical drying materials.
 

 Later, during the booking-in procedure at the jail, police conducted an inventory of defendant’s wallet and pockets, in which they found $2,162 in cash, mostly in twenty-dollar bills.
 

 Defendant was charged with two counts of possession of a schedule II controlled substance. ORS 475.992. He moved to suppress evidence seized from the gym bag and the
 
 *194
 
 trunk of the automobile, on the ground that it was obtained during an unlawful search. The state argued that the search was lawful, because it was based on escalating probable cause and the automobile exception to the warrant requirement. In the alternative, the state argued that the inevitable discovery doctrine applied.
 

 The trial court concluded that Fuhrmann lacked probable cause to search the vehicle, because the fact that passengers have drugs or drug paraphernalia in their closed purses is not enough to supply probable cause to believe that more drugs will be found elsewhere in the vehicle in locations not immediately adjacent to the passengers or their purses. With respect to the inevitable discovery contention, the trial court concluded that an inventory of the automobile inevitably would be made, but that the inevitable discovery doctrine did not apply, because the items seized were “primary,” rather than “derivative,” evidence. The court granted the motion to suppress the evidence seized from the automobile.
 

 The state moved for reconsideration. It argued, among other things, that the search was lawful as incident to Nove’s arrest. The trial court refused to consider that argument, because the state had not raised it at the initial hearing on defendant’s motion to suppress. The trial court thus reaffirmed its earlier ruling.
 

 The state appealed, and the Court of Appeals reversed. On defendant’s petition, we allowed review.
 

 PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES
 

 A.
 
 Defendant’s Protected Privacy Interest in the Automobile.
 

 The state first argues that defendant had no protected privacy interest in the automobile that was searched. A search or seizure must violate defendant’s protected privacy rights under Article I, section 9, of the Oregon Constitution, before evidence will be suppressed.
 
 State v. Davis,
 
 313 Or 246, 834 P2d 1008 (1992);
 
 State v. Tanner,
 
 304 Or 312, 316-17, 745 P2d 757 (1987).
 

 No evidence disputes defendant’s claim of an interest in the automobile. Indeed, at the hearing on the state’s
 
 *195
 
 motion for reconsideration, the trial court referred specifically to the automobile in question as “one in which [defendant] was exercising control and had the right to control.” The trial court’s findings of historical fact are, when supported by the record, binding on an appellate court.
 
 State v. Miller,
 
 300 Or 203, 227, 709 P2d 225 (1985),
 
 cert den
 
 475 US 1141 (1986).
 

 There is uncontroverted evidence of defendant’s right to control the vehicle searched: Defendant told the police that he was buying the automobile, and they testified to his claim. As defendant asserts, the police officers apparently accepted defendant’s statement that he was buying the automobile. Defendant’s connection with the automobile is sufficient to support a privacy interest in him for the purpose of search and seizure law.
 

 B.
 
 Automobile Exception.
 

 The trial court concluded that the officers lacked probable cause to search the automobile for drugs. The trial court also concluded that the items suppressed had been “searched for and seized in the absence of probable cause.”
 

 At the suppression hearing, Fuhrmann testified that he searched the trunk of the automobile and the closed gym bag on the back seat because of the drugs and paraphernalia that he had found in the personal effects of the passengers. He did not testify that he thought that he had probable cause to believe that defendant was connected to, or had in his possession, illegal drugs. Fuhrmann further testified specifically that he did not connect defendant either with the drugs in Nove’s possession or with the paraphernalia in Swanson’s possession. The trial court found facts consistent with that testimony. Additionally, nothing about the crime for which defendant was arrested (felony driving while revoked) connected him to a possible drug crime.
 

 The state argues that, notwithstanding the trial court’s findings of fact, the search of the automobile was justified by probable cause plus exigency under the “automobile exception” described in
 
 State v. Brown,
 
 301 Or 268, 274-77, 721 P2d 1357 (1986).
 
 [1]
 
 In support of its contention, the state
 
 *196
 
 asserts that the following facts, when taken together, provided as a matter of law probable cause to search the automobile for more drugs:
 

 “(1) that defendant was driving a car registered to someone else and to which he had no proof of ownership; (2) that the two passengers initially had lied about their identities; (3) that the car’s occupants were driving to a suspected drug house; (4) that one of defendant’s passengers had an outstanding warrant on a drug charge and was in possession of methamphetamine; and (5) that the other had syringes in her purse. * * * Given those facts, it was objectively reasonable for the officers to believe that the bag lying in the back seat of the car might belong to any one of the three occupants of the automobile and that it would contain evidence of drug crimes.”
 

 Under all the circumstances, however, there was not probable cause to search the automobile. First, the trial court found that the officers did not connect defendant with the drugs or the paraphernalia found in the passengers’ personal effects, and they did not believe that he had committed a drug crime. Second, the trial court found that the officers connected defendant, but not the passengers, with the ownership and control of the automobile. The record supports those findings, and we therefore are bound by them on review. Third, Fuhrmann testified that he had asked Nove whether the closed gym bag was hers and that she had said no; he did not say that he did not believe her. Fourth, the officers articulated no reason to believe that either passenger had additional property with her, apart from the ordinary personal effects (purses) that were with them in the front seat. Fifth, the officers did not ascertain that defendant was intending to go to the suspected drug house himself or that he knew the nature of that location where the passengers intended to go. On this record, the state failed to demonstrate probable cause to search the automobile.
 
 [2]
 
 Assuming mobility of the vehicle,
 
 *197
 
 the “automobile exception” does not justify a warrantless search in the absence of probable cause to search.
 

 INEVITABLE DISCOVERY BY INVENTORY
 

 In the alternative, the state argues that, even if the officers lacked probable cause to search the automobile and to seize the gym bag on the back seat and the paper bag in the trunk, the evidence seized from those locations was admissible, because it inevitably would have been discovered after the officers lawfully impounded and inventoried the vehicle. This court has recognized a doctrine of inevitable discovery.
 
 See State v. Paulson,
 
 313 Or 346, 353, 833 P2d 1278 (1992) (describing doctrine of inevitable discovery: when police inevitably would have discovered the same evidence lawfully irrespective of an unlawful search or seizure, suppression is not necessarily required).
 

 This court also has established requirements for inevitable discovery through valid inventory. In
 
 State v. Atkinson,
 
 298 Or 1, 10-11, 688 P2d 832 (1984), this court held:
 

 “If the vehicle is in lawful administrative custody, any inventory must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory.
 
 See generally State v. Tourtil-lott,
 
 289 Or 845, 860, 618 P2d 423 (1980);
 
 see also South Dakota v. Opperman,
 
 [428 US 364, 383, 96 S Ct 3092, 49 L Ed 2d 1000 (1976)] (Powell, J., concurring).
 

 “If the evidence shows that the inventory deviated from the established policy or procedures of the particular law enforcement agency, the inventory should be deemed invalid. The scope of the inventory must be limited to that — an inventory. Objects found within the inventoried vehicle should be scrutinized only to the extent necessary to complete the inventory.
 

 “The degree to which an inventorying officer may scrutinize the items uncovered is limited.
 
 See State v. Perry,
 
 298
 
 *198
 
 Or 21, 688 P2d 827 (1984), decided this day [police may not open to inventory unlocked suitcases’ contents in a ‘detox center’ even if suitcases are too large to be placed in secure storage].
 
 See also State v. Keller,
 
 [265 Or 622, 510 P2d 568 (1973)], where we held that police conducting an inventory of an automobile ‘pursuant to administrative requirements’ (265 Or at 624) could not open a fishing tackle box which was secured with wire tied around it, but would be required to inventory only the container as ‘one fishing tackle box.’ 265 Or at 626, 629. In
 
 Opperman,
 
 the police, when they inventoried the glove compartment, found in addition to marijuana, ‘miscellaneous papers’ (a checkbook, an installment loan book, and a social security status card) which they removed without examination. The
 
 Opperman
 
 opinion indicates that a majority of the Supreme Court of the United States would not approve of examining such documents as a part of the routine vehicle inventory process. Justice Powell emphasized that approval of the inventory in that case ‘provides no general license for the police to examine all the contents of such automobiles.’
 
 South Dakota v. Opperman, supra,
 
 428 US at 380 (Powell, J., concurring).” (Footnote omitted.)
 

 This court pointed out
 
 in Atkinson
 
 that the basis for an inventory must be noninvestigative.
 
 Id.
 
 at 12.
 

 The evidence in the present case fails to satisfy the
 
 Atkinson
 
 requirements for an inventory; the trial court erred in concluding otherwise. The only relevant evidence was the following testimony by Fuhrmann:
 

 “Q. Okay. Does the Salem Police Department have a written policy on towing vehicles and when an inventory search is required?
 

 “A. Yes, we do. If we are going to tow a vehicle, we’re required to do an inventory search.
 

 “Q. And does that policy allow the officer any discretion?
 

 “A. No.
 

 “Q. * * * [W]ould you have been towing that vehicle that night?
 

 “A. Yes, we would have.
 

 [[Image here]]
 

 
 *199
 
 “Q. And with that, was there any discretion as to whether or not you would inevitably inventory that vehicle as well?
 

 “A. No. We would have.
 

 “Q. Okay. And would an inventory also have included examining the contents that you found in the back seat of that vehicle?
 

 “A. Yes, it would have.
 

 “Q. And does the inventory also include the trunk?
 

 “A. Yes, it does.”
 

 That evidence is insufficient to establish the requirements for a valid inventory in two respects. First, it does not demonstrate what politically accountable authority promulgated the inventory policy, as
 
 State v. Lippert,
 
 317 Or 397, 401, 405, 856 P2d 634 (1993), and
 
 Nelson v. Lane County,
 
 304 Or 97, 102, 105, 743 P2d 692 (1987), require. Second, the evidence does not demonstrate that the closed gym bag would have been opened as part of the inventory. “[E]xamining the contents” of the back seat could mean simply listing a gym bag in the inventory. The record is insufficient to support the state’s inevitable-discovery-by-inventory theory.
 

 SEARCH INCIDENT TO PASSENGER’S ARREST
 

 On review, the state contends that the search of the automobile and seizure of the contents of the gym bag on the back seat and of the bag in the trunk was justified as incident to Nove’s arrest.
 
 See State v. Caraher,
 
 293 Or 741, 759-60, 653 P2d 942 (1982) (discussing search incident to arrest). The trial court refused to consider the state’s incident-to-arrest theory, because the state raised it for the first time at the hearing on reconsideration, after the trial court had granted defendant’s motion to suppress. The state recognizes that that decision was a discretionary one and does not argue that the trial court abused its discretion by refusing to reopen the evidentiary hearing to obtain a basis on which to consider the state’s new theory. Under the circumstances, we are not prepared to hold that the trial court abused its discretion. The trial court committed no error by refusing to reopen the evidentiary portion of the suppression hearing. When, as here, the state does not properly raise in the trial court a theory to
 
 *200
 
 support a warrantless search, generally that theory is not available on -appeal or review.
 
 State v. Hickmann,
 
 273 Or 358, 540 P2d 1406 (1975).
 

 The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed.
 

 [1]
 

 Under a branch of the exigency exception to the warrant requirement of Article I, section 9, of the Oregon Constitution that has been labeled the “automobile
 
 *196
 
 exception,” police may search a lawfully stopped automobile without waiting to obtain a warrant if: (1) there is “probable cause to believe that the lawfully stopped automobile contains contraband or crime evidence” and (2) exigency is present, because the automobile is mobile at the time.
 
 State v. Brown,
 
 301 Or 268, 274-77, 721 P2d 1357 (1986). Provided that those elements are met, the exception “justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances.”
 
 Id.
 
 at 277.
 

 [2]
 

 We do not mean to suggest that we are holding that probable cause as to a passenger cannot support the search of a vehicle’s passenger compartment in a
 
 *197
 
 proper case. We hold only that the findings in this case do not supply the required nexus.