

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1551-10

**GARY LYN BLACK, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## JOHNSON COUNTY

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and
WOMACK, JOHNSON, KEASLER, HERVEY, COCHRAN and ALCALA, JJ., joined. MEYERS,
J., filed a dissenting opinion.

## O P I N I O N

The appellant was convicted of possession with intent to deliver methamphetamine

in an amount between four and 200 grams, and the jury assessed his punishment at thirty

years' imprisonment. In an unpublished opinion, the Tenth Court of Appeals affirmed the

appellant's conviction, holding that the trial court did not abuse its discretion in denying the

appellant's motion to suppress the contraband.[1]  We granted the appellant's petition for discretionary review primarily to decide whether the trial court erred to re-open the hearing on the motion to suppress shortly after trial commenced to hear additional evidence outside the jury's presence in support of its pretrial denial of the appellant's motion.  The appellant contends that this procedure violated *Rachal v. State*.[2]  We will affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL POSTURE

### In the Trial Court

The appellant filed a pretrial motion to suppress the methamphetamine seized from his person, contending that the original stop that led to his arrest was conducted without a warrant.  The trial court waited until the morning after the jury was selected, but before the trial itself had begun, to conduct a pretrial hearing on the motion.  At the hearing, the State elicited testimony from Investigator Brent Dickey of the Johnson County STOP Special Crimes Unit that, on August 8, 2007, he was in an undercover vehicle conducting surveillance of the appellant's home in Alvarado.[3]  Dickey observed the appellant leave the

---

[1]  *Black v. State*, No. 10-08-00290-CR, 2010 WL 2953129, at *2 (Tex. App.—Waco July 28, 2010) (opinion on original submission) (not designated for publication) (hereinafter, *Black I*); *Black v. State*, No. 10-08-00290-CR, 2010 WL 3433998, at *1 (Tex. App.—Waco Sept. 1, 2010) (opinion on reh'g) (not designated for publication) (hereinafter *Black II*).

[2]  917 S.W.2d 799 (Tex. Crim. App. 1996).

[3]  "STOP" is an apparent acronym, but insofar as we have been able to determine, Dickey did not testify to, and the record does not otherwise reveal, what it stands for.

house in a car, and he followed as the appellant drove toward Burleson. Dickey was familiar with the appellant and believed that there were active warrants for his arrest, a fact he confirmed by calling the warrants division of the Sheriff's Office. Not wanting to compromise his undercover status, Dickey called, via dispatcher, for a marked Burleson police car to stop the appellant based on the active arrest warrants. Officer John Morgan of the Burleson Police Department responded and initiated a traffic stop of the appellant, who proved not to have a driver's license. As Dickey stood by watching, Morgan then arrested the appellant on the basis of the outstanding warrants and his driving without a license. Performing a pat-down search of the appellant, Morgan found a metal cigarette tin in the pocket of his shorts containing several baggies of methamphetamine.

At the conclusion of the hearing, counsel for the appellant argued that the arrest warrants the State proffered in justification for the appellant's stop were invalid because the supporting documentation had not been executed until after the issuance of the warrants themselves. Both warrants were signed by Johnson County Justice of the Peace Pat Jacobs. One warrant authorized the appellant's arrest for the offense of driving with expired license plates. Although this warrant was signed on April 19, 2007, the police officer's affidavit in support of the warrant was not executed until May 1, 2007. The other warrant authorized the appellant's arrest for failing to appear in Judge Jacobs's court. This warrant was also signed on April 19, 2007. The complaint in support of this warrant was sworn out by a court clerk, and avers on its face that it was "filed" on April 19, 2007. However, the jurat, also signed

by Judge Jacobs, is actually dated the next day, April 20, 2007. The appellant argued that, because the sworn documentation for both warrants post-dated the warrants themselves, the warrants could not legally support the initial stop that led to his arrest. At the conclusion of argument, the trial court announced that it would deny the appellant's motion to suppress. The appellant expressly requested written findings of fact and conclusions of law,[4] and the trial court directed the State to prepare them.

Later the same day, the appellant's jury trial commenced. Just before the jury entered the courtroom, counsel for the appellant announced on the record that he would object to any effort on the State's part to re-litigate the motion-to-suppress issue: "I'll object each and every time if there is any type of relitigation pursuant to a Rachal v. State, R-A-C-H-A-L. I will not consent to relitigation." Nevertheless, on the second day of trial, after Investigator Dickey and Officer Morgan had each testified during the State's case-in-chief, the prosecutor requested the trial court "to, in effect, re-open, supplement, whatever the case may be, the motion to suppress, for the record that you're able to consider so that it properly shows the truth and the facts in this case." Pursuant to this request, the State was permitted to elicit testimony, outside the jury's presence, from Judge Jacobs. She testified that she was present on the date the appellant failed to appear, that the offense of failure to appear occurred in her view, and that she issued the warrant for failure to appear on the basis of this personal

---

4

    *See State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) (on request of losing party at a pretrial suppression hearing, trial court is required to enter express findings of fact and conclusions of law).

knowledge. At every stage, the appellant objected to this supplementation of the motion-to-suppress record. The trial court never expressly ruled on those objections. Nevertheless, in the findings of fact and conclusions of law that the State subsequently prepared, and the trial court signed, the trial court concluded that, because the failure-to-appear offense had occurred in Judge Jacobs's presence, the warrant that she issued for the appellant's arrest was expressly authorized under Article 45.103 of the Texas Code of Criminal Procedure.[5]

### In the Court of Appeals

On appeal, the appellant challenged the trial court's denial of his motion to suppress. He argued, as he had at trial, that the arrest warrants did not comply with Article 15.03(a)(2) of the Texas Code of Criminal Procedure because the supporting documents were not executed until after the arrest warrants had issued.[6] In an unpublished opinion, the court of appeals sidestepped the appellant's argument, holding that the trial court did not err in concluding that Article 45.103 allowed for Judge Jacobs's issuance of the arrest warrant without a sworn complaint for failure to appear and that the arrest warrant for that offense was valid.[7] On this basis, the court of appeals concluded that the trial court did not abuse its

---

[5] TEX. CODE CRIM. PROC. art. 45.103 ("If a criminal offense that a justice of the peace has jurisdiction to try is committed within the view of the justice, the justice may issue a warrant for the arrest of the offender." ).

[6] TEX. CODE CRIM. PROC. art. 15.03(a)(2) ("A magistrate may issue a warrant of arrest or a summons . . . [w]hen any person shall make oath before the magistrate that another has committed some offense against the laws of the State[.]").

[7] *Black I, supra*, at *2.

discretion in denying the appellant's motion to suppress.[8]

The appellant filed a motion for rehearing, complaining that there was no legitimate evidence in the record to show that the failure to appear occurred in the presence of Judge Jacobs. He maintained that the trial court erred in reopening the suppression evidence during the course of the trial in order to allow Judge Jacobs to testify. The court of appeals denied the motion for rehearing in a memorandum opinion.[9] The court of appeals acknowledged that, under *Rachal*, a reviewing court may consider evidence presented during trial that relates to a suppression issue only if the suppression issue is re-litigated before the fact-finder by consent of the parties.[10] But the court of appeals distinguished *Rachal*, noting that, in this case, the trial court had permitted Judge Jacobs to testify in the context of a reopening of the suppression hearing, outside of the jury's presence.[11] On the strength of an opinion from the Austin Court of Appeals in *Montalvo v. State*,[12] the court of appeals held that it was within the trial court's discretion to allow a mid-trial supplementation of the record on the motion

---

[8] *Id.*

[9] *Black II*, *supra*, at *1.

[10] *Id.*

[11] *Id.*

[12] 846 S.W.2d 133, 136-38 (Tex. App.—Austin 1993, no pet.).

to suppress.[13]

We granted the appellant's petition for discretionary review in order to address what boils down to two questions: (1) whether the court of appeals erred in holding that *Rachal* does not prohibit a trial court from reopening evidence in order to revisit its ruling on a pretrial motion to suppress, outside the jury's presence, even after trial has commenced; and (2) whether, even assuming that it was permissible for the trial court to reopen the suppression hearing during trial to entertain additional evidence outside the jury's presence, the trial court properly considered Judge Jacobs's testimony that probable cause to issue the arrest warrant for failure to appear was based upon her personal knowledge when the face of the warrant itself indicated that Judge Jacobs's probable-cause finding was based, not on her personal knowledge, but on the court clerk's tardy complaint.

## ANALYSIS

### *Rachal v. State* versus *Montalvo v. State*

---

[13]

The court of appeals succinctly disposed of the appellant's contention thus:

> In a "subpoint of error," Black complains that the trial court erred in reopening the suppression evidence. Citing *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996), Black correctly argues that an appellate court can consider trial evidence on a suppression issue only if it is consensually relitigated at trial. But here, the evidence was not "trial" evidence before the jury. Instead, Judge Jacobs's testimony was presented in a re-opening of the suppression hearing outside of the jury's presence, and the trial court had the discretion to allow it. *See Montalvo v. State*, 846 S.W.2d 133, 136-38 (Tex. App.—Austin 1993, no pet.). We overrule Black's "subpoint."

*Black II*, *supra*.

The rule upon which the appellant principally relies was explicitly mentioned for the first time in a footnote in our opinion in *Hardesty v. State*:[14]

> When appellate courts are asked to determine whether the trial court erred in overruling a pretrial motion the general rule is that we consider only evidence adduced at hearing on that motion and do not resort to testimony subsequently elicited at trial because the ruling in issue was not based on the latter. But where the ground of error complains of the admission of evidence at trial, and the issue has been consensually relitigated by the parties during trial on the merits, consideration of the relevant trial testimony is appropriate. The procedure generally distills to "defendant's choice" because the admissibility of an arrest, search, confession and the like, are not material issues on which the State bears the burden of proof at trial—unless raised by the defendant. Therefore, any attempt by the State to first interject evidence relevant only to such issues may be foiled by a proper objection by the defense. But if, as here, the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to reopen the evidence.[15]

In *Rachal*, which the appellant has invoked at every stage of these proceedings, we relied upon the footnote in *Hardesty* to hold:

> [I]n determining whether a trial court's decision [to deny a motion to suppress] is supported by the record, we generally consider only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later. However, this general rule is inapplicable where, as in this case, the suppression issue has been consensually re-litigated by the parties during trial on the merits. Where the State raises the issue at trial either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to re-open the evidence, and

---

[14]  667 S.W.2d 130 (Tex. Crim. App. 1984).

[15]  *Id*. at 133 n.6 (citations omitted).

consideration of the relevant trial testimony is appropriate in our review.[16]

The appellant argues that, consistent with these holdings, a trial court, once it has ruled on a pretrial motion to suppress, lacks the authority to "re-open" the suppression issue unless the defendant has "made an election" to do so by either subsequently re-raising the suppression issue himself or acquiescing in the State's reintroduction of the issue at trial. Because he vigorously resisted reopening the suppression issue once the trial court made its initial ruling at the conclusion of the pretrial hearing, the appellant contends, appellate review of the propriety of that ruling is limited to evidence in the record up to that point.

In rebuttal, the State argues that the general rule identified in *Hardesty* and *Rachal* speaks only to a limitation on what is available for appellate review of a trial court's ultimate ruling on a pretrial suppression motion, and not to the trial court's own authority to reopen the suppression hearing itself to expand the record. Evidence adduced before the fact-finder at trial may not be taken into account in an appellate review of the propriety of the trial court's ruling on a motion to suppress, the State readily concedes, absent consent of the parties. But that does not mean that a trial court lacks authority to later reopen the suppression hearing, outside the jury's presence, to entertain additional evidence relevant to a re-visitation of the correctness of its initial ruling. And if the trial court exercises its authority to permit additional evidence in the context of a renewed suppression hearing, the reviewing court must consider that additional evidence in determining the propriety of the

---

[16] *Rachal*, *supra*, at 809 (citations omitted).

trial court's ultimate ruling on the motion to suppress. This, the State argues, was the essence of the Austin Court of Appeals's holding in *Montalvo*, upon which the court of appeals in this case appropriately relied. After an in-depth examination of *Montalvo*, we agree with the State.

Authored by our former Presiding Judge, John F. Onion, Jr., in his capacity as a retired judge sitting by assignment to the Austin Court of Appeals, *Montalvo* issued in 1993, after our 1984 opinion in *Hardesty* but before our 1996 opinion in *Rachal*. The question presented, which Judge Onion characterized as one "apparently of first impression," was whether the trial court had the authority to reopen a pretrial hearing, at the State's instigation, in order to consider new evidence relevant to a motion to suppress that it had already granted.[17] The trial court had doubted police testimony that the search of an ashtray in the defendant's car at the time of his arrest constituted a reasonable search for a weapon.[18] Four days after the trial court granted Montalvo's motion to suppress, the State filed a motion requesting the trial court to reopen the hearing, appending evidence to establish that a weapon could readily fit within the recess of the car that contained the ashtray.[19] The trial

---

[17] *Montalvo*, *supra*, at 134-35.

[18] *Id*. at 135.

[19] *Id*.

court granted the motion to reopen the hearing and reversed its original ruling.[20] Montalvo

pled guilty and appealed.[21] He first argued that, once the trial court had granted his motion

to suppress, the State's exclusive remedy was to pursue an interlocutory appeal under Article

44.01(a)(5) of the Code of Criminal Procedure.[22] Judge Onion rejected this argument,

finding no legislative intent that the statutory availability of an interlocutory appeal should

foreclose the State from opting to seek reconsideration at the trial court level of a ruling that

the State regarded as mistaken.[23]

Judge Onion then turned his attention to Montalvo's alternative contention.[24]

Montalvo argued that the trial court lacked the authority to reopen the evidence at the

suppression hearing because the parties had already rested and closed their respective

proffers of evidence and had completed their final arguments to the court.[25] To allow

additional evidence beyond that point, Montalvo maintained, would run contrary to Article

---

[20] *Id.*

[21] *Id*.

[22] TEX. CODE CRIM. PROC. art. 44.01(a)(5).

[23] *Montalvo*, *supra*, at 136.

[24] *Id*.

[25] *Id*. at 137.

36.02 of the Code of Criminal Procedure.[26] Noting that Montalvo "would apparently substitute 'before the argument of a motion to suppress is concluded' for the statutory language of 'before the argument of a case [sic: cause] is concluded[,]'" Judge Onion rejected this construction of Article 36.02, holding that, if anything, Article 36.02 should be interpreted "to be broad enough to permit the trial court within its discretion to reopen a suppression hearing . . . if it appears necessary to the due administration of justice."[27] After all, he reasoned, "[a] motion to suppress is nothing more than a specialized objection" to evidence, which may be—but is not *required* to be—resolved, under Article 28.01 of the Code of Criminal Procedure,[28] prior to trial.[29] "The applicability of article 36.02 should not rest upon" whether the trial court opts to conduct a pretrial hearing on the motion to suppress or instead to carry the motion over for trial.[30] Judge Onion went on to catalog opinions from "[o]ther jurisdictions [that] have held that the trial court has the discretionary power to reconsider rulings on suppression hearings, even in the absence of a statute such as article

---

[26]

TEX. CODE CRIM. PROC. art. 36.02 ("The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice.").

[27]

*Montalvo*, *supra*, at 137.

[28]

TEX. CODE CRIM. PROC. art. 28.01, § 1(6).

[29]

*Montalvo*, *supra*, at 137-38 (citing, *inter alia*, *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981).

[30]

*Id*. at 138.

36.02."[31] Albeit without any reference to this Court's opinion in *Hardesty*, Judge Onion concluded that "[t]he trial court had continuing jurisdiction over the case and was free to reconsider its own earlier suppression ruling."[32]

We agree with Judge Onion's analysis. A trial court "may," but is not required to, resolve a motion to suppress evidence in a pretrial hearing under Article 28.01 of the Code of Criminal Procedure.[33] In essence, a pretrial motion to suppress evidence is "nothing more than a specialized objection to the admissibility of that evidence."[34] A pretrial ruling on such a motion is interlocutory in nature.[35] As such, it should be regarded as just as much the subject of reconsideration and revision as any other ruling on the admissibility of evidence under Rule 104 of the Texas Rules of Evidence,[36] which a trial court may revisit at its

---

[31] *Id*.

[32] *Id*.

[33] TEX. CODE CRIM. PROC. art. 28.01, § 1(6) ("The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits[.] * * * The pre-trial hearing shall be to determine any of the following matters: . . . Motions to suppress evidence[.]").

[34] *Galitz*, *supra* (emphasis omitted).

[35] *State v. Stevens*, 261 S.W.3d 787, 792 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *State v. Henry*, 25 S.W.3d 260, 262 (Tex. App.—San Antonio 2000, no pet.).

[36] *See* TEX. R. EVID. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)."); and *id*. 104(b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to the introduction of evidence sufficient to support a finding of the fulfillment of the condition.").

discretion at any time during the course of a trial.[37] To the extent that Article 36.02 may be said to circumscribe a trial court's authority to reopen a hearing on a motion suppress, it should be construed, as Judge Onion concluded, according to its terms. By this reckoning, Article 36.02 restricts the trial court's discretion to reopen a hearing on a motion to suppress only to the extent that it prohibits further evidence *of any kind* once the parties have concluded their arguments of the "cause"—that is to say, the trial itself.[38] As Judge Onion pointed out in *Montalvo*, this conclusion is bolstered by case law from other jurisdictions that have concluded that a trial court retains the authority to reopen a suppression hearing and revisit its pretrial ruling thereon during the course of trial.[39] We therefore hold that the trial

---

[37]

Indeed, Rule 104(b) clearly contemplates that the trial court may be required to revisit the question of the admissibility of certain evidence long after it has declared that evidence at least contingently admissible. *See Fischer v. State*, 268 S.W.3d 552, 555-56 (Tex. Crim. App. 2008). We see no reason why a trial court should lack the authority likewise to revisit a preliminary determination with respect to the admissibility of evidence under Rule 104(a), if requested to do so for sufficient cause by one of the parties—at its discretion, of course, and subject to Article 36.02.

[38]

Article 36.02 appears in Chapter 36 of the Code, under "Trial and Its Incidents: The Trial Before the Jury." On the face of it, then, it would seem that the reach of Article 36.02 would be limited to regulating the admission of evidence proffered at the jury trial itself. This is not to say, however, that the Court has never suggested it might apply in principle, at least analogously, in other criminal-law contexts. In *Stout v. State*, 500 S.W.2d 153, 154 (Tex. Crim. App. 1973), we held that a trial court did not abuse its discretion to allow the State to reopen the evidence at a probation revocation proceeding to supply additional evidence after Stout complained at the close of evidence that the State's proffer was insufficient to support its motion to revoke. In so holding, we cited two cases that do not mention Article 36.02, but then gave a "cf." cite to Article 36.02. A "cf." cite conventionally means that the named authority "supports a proposition different from the main proposition but sufficiently analogous to lend support." THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 55 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).

[39]

To the numerous cases cited by Judge Onion, 846 S.W.2d at 138, we now add: *Gibbons v. People*, 167 Colo. 83, 86, 445 P.2d 408, 409 (1968) (trial court may revisit pretrial ruling on motion

court in this cause had the discretionary authority to reopen the hearing on the appellant's motion to suppress evidence, even mid-trial, to allow the State to present additional evidence in support of the trial court's initial, interlocutory ruling to deny the motion.

Our holding that a trial court has the authority to reopen the hearing on a motion to

---

to suppress and even "has a duty" to do so where new United States Supreme Court case calls propriety of original ruling into question); *State v. Smith*, 184 Neb. 363, 370, 167 N.W.2d 568, 572 (1969) (notwithstanding statutory language requiring that motions to suppress ordinarily be litigated prior to trial, trial court retains authority to revisit and correct pretrial rulings during trial); *People v. Holland*, 56 Ill.2d 318, 321, 307 N.E.2d 380, 382 (1974) (trial court has jurisdiction to reconsider pretrial ruling on motion to suppress); *Waugh v. State*, 275 Md. 22, 35, 338 A.2d 268, 275 (1975) (statute permits trial court to revisit pretrial ruling on motion to suppress); *State v. Hayford*, 412 A.2d 987, 990 (Me. 1980) (pretrial ruling on motion to suppress not a final judgment and could be reconsidered at trial); *Savoie v. State*, 422 So. 2d 308, 311-12 (Fla. 1982) (rule governing timing of suppression motions did not preclude trial court from exercising its "inherent power" to revisit previous ruling on motion to suppress during trial); *State v. Cole*, 434 So. 2d 1103 (La. 1983) (trial court has discretion to revisit interlocutory pretrial ruling on motion to suppress); *State v. Montjoy*, 366 N.W.2d 103, 107 (Minn. 1985) (fact that State could appeal pretrial order granting motion to suppress did not deprive trial court of authority to reopen suppression hearing and change its ruling); *Thompson v. Steptoe*, 179 W. Va. 199, 202, 366 S.E.2d 647, 650 (1988) (trial court has discretion to reopen hearing on motion to suppress "regardless of whether the evidence is newly discovered or merely omitted at the initial proceeding"); *City of Fargo v. Casper*, 512 N.W.2d 668, 670 (N.D. 1994) ("A trial court's decision to suppress evidence is an interlocutory order and may be reconsidered by the trial court on its own motion or upon motion by the parties."); *State v. Haycock*, 139 N.H. 610, 611, 660 A.2d 1115, 1115-16 (1995) (trial court's "discretionary powers are continuous" and it may reconsider earlier ruling on motion to suppress); *State v. McClure*, 74 S.W.3d 362, 368 (Tenn. Crim. App. 2001) (motion to reconsider or reopen proof at suppression hearing is matter of trial court's discretion); *State v. Simoneau*, 176 Vt. 15, 28, 833 A.2d 1280, 1290 (2003) (trial court has "broad discretion in deciding whether to reopen" hearing on pretrial motion to suppress); *State v. Dispoto*, 383 N.J. Super. 205, 215, 891 A.2d 633, 639 (App. Div. 2006) (pretrial ruling on motion to suppress is interlocutory and trial court has "inherent power" to revise it any time before final judgment in the case); *State v. Bozung*, 245 P.3d 739, 742-43 (Utah 2011) (trial court has "broad discretion" to revisit pretrial rulings on motions to suppress and should do so liberally). *Cf. State v. Herrin*, 323 Or. 188, 197, 915 P.2d 953, 958 (1996) (trial court did not abuse its discretionary authority by declining to reopen suppression hearing at State's request); *People v. Jackson*, 13 Cal. 4th 1164, 1202-05, 920 P.2d 1254, 1273-75, 56 Cal. Rptr. 2d 49, 68-70 (1996) (though statute prohibits trial court from revisiting pretrial ruling *granting* motion to suppress, statute does not speak to trial court's authority to reopen hearing to admit additional evidence in support of its pretrial ruling *denying* motion to suppress).

suppress evidence even after trial has begun is easily harmonized with *Hardesty* and *Rachal*.

Neither *Hardesty* nor *Rachal* purported to decide the trial court's authority, *vel non*, to reopen

a suppression hearing during the course of a trial; they merely set out a general rule that

governs appellate review of rulings on pretrial motions to suppress, with an exception that

broadens the permissible scope of that appellate review under circumstances in which further

evidence is admitted during the course of trial, at the will of the parties, that pertains to the

propriety of the earlier ruling.  Neither the general rule nor the exception to it even addresses,

much less precludes, a trial court itself from hearing additional evidence and either revising

or reiterating its initial ruling.  In short, our holding today effectuates no radical change in

the law.[40]  The general rule: In cases in which the trial court is never asked, or is asked but

declines, to exercise its discretionary authority to reopen the suppression hearing, appellate

review of its ruling on the motion to suppress is ordinarily limited to that evidence presented

at the pretrial hearing—the evidence that was before the court at the time of its decision.  The

exception: If the parties consensually broach the suppression issue again before the fact-

---

[40]    In *State v. Cowsert*, the trial court granted the appellant's pretrial motion to suppress evidence.  207 S.W.3d 347, 349 (Tex. Crim. App. 2006).  Rather than pursue a timely appeal of that pretrial ruling under Article 44.01(a)(5), the State later filed a motion requesting that the trial court reconsider its initial ruling based upon intervening case law from this Court.  *Id*.  When the trial court denied the motion to reconsider, the State attempted to appeal the denial.  *Id*.  We held that the State lacked the right to appeal the denial of the motion for reconsideration because the plain language of Article 44.01(a)(5) permits the appeal only of orders that grant motions to suppress, *not* subsequent orders refusing to reconsider the granting of motions to suppress.  *Id*. at 351.  But in remanding the cause to the trial court for further proceedings, we did observe, consistent with Judge Onion's opinion in *Montalvo*, that "the State can again request reappraisal of the suppression issue in light of the current case law and this opinion."  *Id*. at 352.

finder at trial, the reviewing court should also consider the evidence adduced before the fact-finder at trial in gauging the propriety of the trial court's ruling on the motion to suppress. Finally, the corollary rule: If at any point before the conclusion of final arguments at trial, the trial court should exercise its discretionary authority to reopen the suppression hearing, the reviewing court should also consider whatever additional evidence may be spread on the record bearing on the propriety of the trial court's ultimate ruling on the motion to suppress.

Accordingly, we conclude that it was within the trial court's discretion to grant the State's request to reopen the motion-to-suppress hearing to supplement the record with additional testimony from Judge Jacobs, outside the jury's presence, even over the objection of the appellant.[41] The court of appeals did not err to consider that testimony in affirming the trial court's ultimate ruling on the appellant's suppression motion.

## Article 45.103

The arrest warrant for failure to appear asserted that the foundation for Judge Jacobs's belief that the appellant had committed that offense was "the written complaint, under oath, of court clerk filed before" her. Because on its face the warrant purports to rely for its probable cause upon the complaint, the appellant argues, it was impermissible for the trial court to venture beyond the complaint itself by considering Judge Jacobs's testimony with respect to her own personal knowledge as a basis for probable cause to arrest the appellant

---

[41] Whether the rule should necessarily be the same in a trial before the court is not a question that is presented by the facts of this case, and we need not address it today.

for failure to appear. For this reason, the appellant maintains, even if it was acceptable for the trial court to consider additional evidence in a reopened suppression hearing during trial, the trial court nevertheless erred to go beyond the four corners of the warrant to confirm probable cause, notwithstanding the defective complaint. The court of appeals erred, he concludes, to hold otherwise.

The issuance of arrest warrants is governed by Article 15.03(a) of the Code of Criminal Procedure.[42] Specifically relevant to this case, Subsection 3 of Article 15.03(a) permits a magistrate to issue an arrest warrant "where he is specially authorized" by some other provision of the Code of Criminal Procedure to do so.[43] Article 45.103 of the Code constitutes just such a special statutory authorization, allowing a justice of the peace, such as Judge Jacobs, to issue an arrest warrant for any offense she has jurisdiction to try that is committed within her "view."

The appellant seems to assert that, in determining the *source* for an issuing magistrate's finding of probable cause, trial and reviewing courts are bound by the four corners of the arrest warrant itself. Because the arrest warrant for failure to appear, on its face, identified the source of probable cause as the clerk's defective complaint, the appellant

---

[42] TEX. CODE CRIM. PROC. art. 15.03(a) ("A magistrate may issue a warrant of arrest . . . 1. In any case in which he is by law authorized to order verbally the arrest of an offender; 2. When any person shall make oath before the magistrate that another has committed some offense against the laws of the State; and 3. In any case named in this Code where he is specially authorized to issue warrants of arrest.").

[43] *Id.*

argues, the four-corners rule prohibited the trial court from measuring the adequacy of probable cause against any other source of information. We disagree. The four corners rule applies not to a review of the face of the warrant itself, but to a review of the accompanying affidavit or complaint that purports to supply the probable cause necessary to issue the warrant. Unlike the case with a warrant affidavit, which must supply probable cause before it may validly serve to support the issuance of a warrant, there is no requirement that the face of the warrant itself identify the source for the issuing magistrate's finding of probable cause.[44] The appellant offers no justification for broadening the four-corners rule beyond the context of the supporting affidavit to also encompass the face of the warrant itself,[45] and we cannot readily conceive of any. That the warrant on its face purported to rely for its probable cause upon the defective complaint does not mean that Judge Jacobs could not rely upon the authority provided by Article 45.103 for its issuance.

Finally, the appellant contends that the court of appeals's opinion in this case is at

---

[44]

*See* TEX. CODE CRIM. PROC. Art. 15.02 (arrest warrant is sufficient if, on its face, it issues in the name of "The State of Texas" and, "without regard to form," it specifies who is to be arrested, names the offense he is accused of having committed, identifies the issuing magistrate's particular office, and is signed by that magistrate).

[45]

In *Dunn v. State*, the defendant was arrested on the basis of an arrest warrant that was not actually signed by the magistrate. 951 S.W.2d 478, 479 (Tex. Crim. App. 1997). Holding that the warrant nevertheless "issued," at least for purposes of applying the good-faith exception of Article 38.23(b) of the Code of Criminal Procedure, we relied upon information in the record, extrinsic to the face of the warrant itself, to determine that "the magistrate found probable cause to issue the warrant, signed the accompanying warrants, and intended but inadvertently failed to sign appellant's arrest warrant." *Id.* (citing TEX. CODE CRIM. PROC. art. 38.23(b)). Thus, we seem to have at least implicitly rejected application of the four-corners rule to the face of the warrant itself, having resorted to other record facts to declare the warrant validly "issued."

odds with an opinion of the Dallas Court of Appeals in *Kosanda v. State*.[46] In *Kosanda*, the defendant was arrested on the basis of three outstanding warrants, one of which was for the offense of failure to appear.[47] None of the complaints that were proffered in support of the warrants was signed or sworn to, however, and so the warrants were invalid.[48] The State conceded that the complaints failed to supply the necessary support for the arrest warrants, but argued alternatively that the warrant for the failure-to-appear offense was nevertheless valid because the offense had occurred in the presence of the justice of the peace who issued the warrant.[49] In holding that the arrest warrant had been issued illegally, the court of appeals rejected the State's alternative argument because the warrant itself purported on its face to rely upon the invalid complaint and there was no evidence in the motion-to-suppress record to support the State's contention that the failure-to-appear offense had actually occurred in the presence of the issuing magistrate.[50] Unlike in *Kosanda*, however, there is testimony in the present record from Judge Jacobs that the appellant's failure to appear was committed in her presence, and today we have held that the trial court properly considered her testimony.

---

[46] 727 S.W.2d 783 (Tex. App.—Dallas 1987, pet. ref'd).

[47] *Id*. at 784.

[48] *Id*.

[49] *Id*.

[50] *Id*. at 785.

*Kosanda* is, therefore, distinguishable on its facts.

## CONCLUSION

For the reasons given, we conclude that the court of appeals did not err to hold that it was within the trial court's discretion to reopen the evidentiary hearing on the appellant's motion to suppress and to entertain Judge Jacobs's testimony. Nor did the court of appeals err in going beyond the face of the warrant and relying on Judge Jacobs's testimony at the reopened motion-to-suppress hearing as sufficient to establish probable cause to issue the appellant's arrest warrant, at least for the offense of failure to appear. Because the appellant was arrested pursuant to a valid arrest warrant, the trial court did not err to deny the appellant's motion to suppress the evidentiary fruit of that arrest. The judgment of the court of appeals affirming the trial court's judgment is itself, accordingly, affirmed.


DELIVERED:    February 15, 2012
PUBLISH