JAMES, J.
*695 Defendant appeals from a judgment of conviction for unlawful delivery of methamphetamine involving substantial quantities, ORS 475.890(2), and unlawful possession of methamphetamine involving substantial quantities, ORS 475.894, assigning error to the trial court's denial of a motion to suppress the evidence obtained from a warrantless search of his vehicle. Defendant argues the officer's search pursuant to the automobile exception lacked probable cause that the vehicle would contain evidence of narcotics distribution.[1] The state argues that probable cause existed when defendant's truck was searched. We agree with the state and accordingly affirm.
"In reviewing a denial of a motion to suppress, we are bound by the trial court's findings of historical fact that are supported by evidence in the record." State v. Holdorf , 355 Or. 812, 814, 333 P.3d 982 (2014). "We state the facts consistently with the trial court's explicit and implicit factual findings, which the record supports." State v. Keller , 280 Or. App. 249, 250, 380 P.3d 1144 (2016). The facts of the encounter that led to the warrantless search of defendant's vehicle are not disputed. Defendant was in his pickup truck when he was stopped for a traffic infraction. Upon Officer Lutu's contact with defendant, Lutu asked defendant for his license, registration, and insurance. Lutu observed that defendant looked extremely nervous. Defendant's hands were trembling, he was sweating profusely, he did not make eye contact, and he stuttered when he spoke. Lutu also saw defendant's hands drop from his view; he could not see defendant's hands because defendant was driving a truck and Lutu is "not a very tall person."
Defendant, at some point during the initial contact, turned towards his center console twice in a manner Lutu described as an attempt to "shield" what defendant was doing at the center console from Lutu. Defendant also *696 appeared to reach underneath the driver's seat. Defendant said he did not *394 have his license with him, but produced valid insurance for the vehicle and told Lutu that the vehicle was recently purchased from a friend. When defendant provided his name and date of birth, his response was slow, he stuttered when giving the officer his social security number, and could not remember the address associated with his license, all of which caused Lutu to believe that the information being provided was false.
Lutu testified that, at that point in the encounter, based on defendant's behavior, he subjectively believed that defendant was probably trying to hide drugs. Lutu returned to his vehicle and confirmed that the identifying information defendant provided was in fact correct and the vehicle belonged to defendant. Lutu also radioed for a second car. At some point before Lutu initiated defendant's arrest, Lutu asked defendant if he had any marijuana in the car. Defendant answered no, but the passenger volunteered that she possessed some marijuana. After that disclosure, Lutu asked defendant to step out of the car to arrest him for failure to carry and present a license. Defendant did not comply, and Lutu believed that he then had probable cause to arrest him for interfering with a police officer. Once defendant was removed from the vehicle, Lutu asked him if there were any guns, drugs, or legal documents in the vehicle, and asked for permission to search the truck. Defendant did not consent to a search of his vehicle, but said, "[y]ou can search her purse, she's the one with the dirty rigs and the marijuana." Defendant said he did not know why Lutu wanted to search the vehicle, and Lutu asked if anybody else drove the vehicle. Defendant told Lutu that only he and one other person drove the truck.
During the arrest of defendant, a second officer had arrived at the scene and was questioning the passenger. At some point after defendant suggested that Lutu search the passenger's purse, Lutu contacted the passenger. The passenger was still in the vehicle, in the passenger seat, with her feet on a black bag on the floor and a small purse on her lap. Lutu mentioned that defendant had said that the passenger had dirty syringes. The passenger said that she was *697 diabetic and had some syringes. The passenger consented to the search of the purse, but the record does not contain any information about what was found.
Lutu then asked for consent to search the black bag on the floor of the truck and the passenger consented. In a makeup bag located in the black bag, Lutu located a pipe that appeared to have been used for methamphetamine, and a number of small, empty plastic baggies, a marijuana pipe, and some marijuana. Elsewhere in the black bag was a plastic baggie of what Lutu recognized as methamphetamine. At this point, Lutu believed that he had probable cause to search the vehicle for additional drugs because the passenger possessed drugs and packaging material and the driver had made shielding movements toward the center console of the vehicle.
Lutu then searched defendant's vehicle. Under the driver's seat, Lutu discovered a wallet on top of a small safe. The wallet contained defendant's valid driver's license. Lutu opened the safe with a key that he found on defendant's key ring, which Lutu had located in the ignition. The safe contained a container the size of a baseball, and, in the container, was a large crystal of what was later tested and determined to be methamphetamine. Also within the safe were 16 small baggies containing methamphetamine, a small amount of marijuana, and a cell phone belonging to defendant. There were also additional empty baggies in the safe that were consistent with the baggy that contained the passenger's methamphetamine.
Before trial, defendant moved to suppress the evidence recovered from defendant's car including evidence from the safe, as a result of the warrantless search of his vehicle. That motion was denied, and defendant was convicted of unlawful delivery of methamphetamine involving substantial quantities, ORS 475.890(2), and unlawful possession of methamphetamine involving substantial quantities, ORS 475.894.
On appeal, defendant assigns error to the denial of the motion to suppress evidence discovered as a result of the warrantless search of his vehicle. We review the denial of a *698 motion to suppress for errors of law. *395 State v. Underhill , 269 Or. App. 647, 648, 346 P.3d 1214, rev. den. , 357 Or. 743, 361 P.3d 608 (2015). "A search is 'per se unreasonable,' in violation of Article I, section 9[, of the Oregon Constitution], in the absence of a warrant or an exception to the warrant requirement." State v. Unger , 356 Or. 59, 72, 333 P.3d 1009 (2014) (quoting State v. Baker , 350 Or. 641, 647, 260 P.3d 476 (2011) ).
One such exception to the warrant requirement is the automobile exception. State v. Brown , 301 Or. 268, 721 P.2d 1357 (1986). The automobile exception requires both that the vehicle be moving, or momentarily paused in its travels, when it is stopped by police, and that there is probable cause to believe the vehicle contains evidence of a crime. State v. Andersen , 361 Or. 187, 189, 390 P.3d 992 (2017) ("Under the automobile exception to Article I, section 9, officers may search a car if they have probable cause to believe that the car contains evidence of a crime and the car is mobile at the time they stop it."); Brown , 301 Or. at 274, 721 P.2d 1357 (same).
"The probable cause analysis for a warrantless search is the same as for a warranted one." State v. Foster , 350 Or. 161, 169, 252 P.3d 292 (2011). However, in the case of a warrantless search it is the state's burden to show that the search was supported by probable cause. Probable cause exists if the facts on which the officers relied would "lead a reasonable person to believe that seizable things will probably be found in the location to be searched." State v. Anspach , 298 Or. 375, 381, 692 P.2d 602 (1984). That is, there must exist "a nexus between three things: (1) that a crime has been, or is currently being, committed, and that (2) evidence of that crime (3) will be found in the place to be searched." State v. Van Osdol , 290 Or. App. 902, 908, 417 P.3d 488 (2018). The standard is one of probability, not certainty. Anspach , 298 Or. at 380-81, 692 P.2d 602.
In assessing probable cause, a court must consider the "totality of the circumstances, including the officer's training and experience." State v. Vasquez-Villagomez , 346 Or. 12, 23, 203 P.3d 193 (2009). In addition, the facts articulated in support of probable cause must be assessed in a commonsense and realistic fashion.
*699 State v. Coffey , 309 Or. 342, 346, 788 P.2d 424 (1990) ; State v. Villagran , 294 Or. 404, 408, 657 P.2d 1223 (1983).
In the formation of probable cause, the "stacking of inferences" to achieve probable cause is impermissible. State v. Huff , 253 Or. App. 480, 491-92, 291 P.3d 751 (2012) ; see State v. Kolb , 251 Or. App. 303, 313, 283 P.3d 423 (2012) ("[I]n a classic 'stacking of inferences' sense, the totality of the construct is too tenuous and attenuated to produce the requisite result with the requisite degree of (nonspeculative) confidence."). When evaluating the constitutional standard for probable cause, "although an officer is not required to eliminate all possible lawful explanations for a person's conduct before arresting the person, it must be more likely than not that the unlawful explanation is the actual explanation." State v. Martin , 260 Or. App. 461, 471, 317 P.3d 408 (2014) ; State v. Currin , 258 Or. App. 715, 722, 311 P.3d 903 (2013) ("[A]ttempting to conceal a small paperfold of a sort that an officer knows to be associated with drugs while attempting to distract the officer is quite different from trying to conceal the contents of a purse that does not intrinsically suggest that it contains contraband."); see also Foster , 350 Or. at 173, 252 P.3d 292 ("[A]n observation that is consistent with criminal conduct does not have to eliminate any possibility of an innocent explanation to provide probable cause.").
We now turn to applying those principles in this case. First, it is helpful to clarify what is not at issue. It is uncontested that defendant's vehicle was mobile at the time of the stop, and therefore potentially subject to the automobile exception-provided that Lutu had probable cause to believe that evidence of the crime of suspicion-delivery of narcotics-would be found in the vehicle. Andersen , 361 Or. at 189-99, 390 P.3d 992. Second, defendant's passenger consented to a search of both her purse and the bag at her feet, and the validity of that consent is not contested.
Lutu stated that he derived his probable cause to search defendant's vehicle because he found drugs and empty baggies on the *396 passenger and the discovery of the drugs and paraphernalia gave context to the driver's movements toward the center console. Lutu elaborated that the pickup was a smaller vehicle and the center console would be accessible to both the passenger and the driver. However, the discovery of drugs and paraphernalia in the passenger's possession alone does not create the probable cause to search defendant's vehicle. We must determine whether there was a sufficient connection between the passenger and defendant's vehicle, or between the passenger and defendant himself, to create probable cause to search defendant's vehicle.
Both defendant and the state agree that resolution of that question is guided by State v. Herrin , 323 Or. 188, 915 P.2d 953 (1996). In Herrin , the Supreme Court held there was no connection between the drugs in the defendant's passengers' purses and the defendant, his car, or his belongings which could support the warrantless search of the defendant's vehicle. 323 Or. at 194, 915 P.2d 953. The vehicle in Herrin was stopped for a traffic infraction and the driver arrested for driving while revoked. Id. at 190, 915 P.2d 953. Upon further investigation by the officer, one of the passenger's purses was searched with her consent and bindles of methamphetamine were discovered. Id. at 190-91, 915 P.2d 953. The second passenger also gave consent to search her purse, and hypodermic needles were discovered. Id. at 191, 915 P.2d 953. It was then disclosed that the two passengers were going to a house that was thought to be a location of methamphetamine activity. Id. The officer then searched the vehicle without consent or a warrant and located a duffle bag containing drug-related materials. Id.
The court held that the officer lacked probable cause to search the vehicle, reasoning, first, that the trial court found that the officer did not connect the defendant with the drugs or the paraphernalia found in the passengers' purses, nor did the arresting officers believe the driver had committed a drug offense. Id. at 194, 915 P.2d 953. Second, the trial court found that the officers connected the defendant, but not the passengers, with the ownership and control of the vehicle. Id. Third, the passengers did not claim the other bag in the car. Id. Fourth, the officer did not describe any other reason to believe that either passenger had more property than the purses in the front seat with them. Id. Fifth, and finally, the officers did not determine that the defendant was going to the drug house himself or knew of the drug-associated nature of the house. Id.
The Supreme Court in Herrin specified that although it concluded probable cause was not present in that case, it was not holding that probable cause as to a passenger could never provide probable cause to search a vehicle's passenger compartment-just that Herrin was not such a case. 323 Or. at 194 n. 2, 915 P.2d 953. Probable cause is analyzed in the context of the totality of the circumstances. Vasquez-Villagomez , 346 Or. at 23, 203 P.3d 193. If in accordance with an officer's training and experience, behavior that is consistent with criminal conduct may contribute to the development of probable cause. Foster , 350 Or. at 173, 252 P.3d 292.
On this record, there exists a combination of factors that render the warrantless search here, unlike that in Herrin , supported by probable cause. First, in Herrin , the officer did not individually suspect the driver of a narcotics crime. Rather, in Herrin , the search of the car was solely precipitated by the behavior of the passengers. Here, however, Lutu testified that, upon contacting defendant, defendant was extremely nervous and bladed his body to shield his actions at the center console from Lutu's view, and Lutu described this behavior as appearing to be an attempt to hide something.
Furtive movements, on their own, are not indicative of criminal activity. However, furtive movements can be considered in the totality of a probable cause analysis "when they are contemporaneous with the officer's observations of other information consistent with criminal activity." State v. Scarborough , 103 Or. App. 231, 234-35, 796 P.2d 394 (1990) ; State v. Massey , 90 Or. App. 95, 750 P.2d 1192 (1988) ; State v. Herbert , 302 Or. 237, 242, 729 P.2d 547 (1986). The observation of movements reasonably interpreted as an attempt to hide or conceal something can "contribute to the reasonableness of an officer's belief that a person has committed a crime or presents a safety *397 threat." State v. Clink , 270 Or. App. 646, 652, 348 P.3d 1187, rev. den. , 358 Or. 69, 363 P.3d 500 (2015) ; see State v. Rudnitskyy , 266 Or. App. 560, 565, 338 P.3d 742 (2014), rev. den. , 357 Or. 112, 346 P.3d 1213 (2015) (a police officer had reasonable suspicion justifying his stop of the defendant because of the "defendant's furtive gesture with [a] straw," combined with other factors including the officer's "knowledge that plastic straws are commonly used to smoke heroin").
If Lutu had only observed defendant's furtive gestures, this case might not be sufficiently distinguishable from Herrin . However, those furtive gestures were also accompanied by a statement from defendant attempting to direct Lutu's attention away from his vehicle by suggesting that Lutu search the passenger's purse instead of his vehicle because she had "dirty rigs." That statement makes it more likely than not that there existed some connection between defendant and the passenger-a connection sufficient enough to give him knowledge of the contents of her belongings. That statement not only ties defendant to the passenger, by implication it ties the passenger to the vehicle, in a way not present in Herrin .
That combination of facts-defendant's nervousness, defendant's movements that Lutu interpreted as an attempt to shield attention from the center console, defendant's knowledge of the contents of the passenger's bag, and the discovery via consent of the contents of that bag which included narcotics and packaging materials-created a situation in which the totality of the circumstances indicated that it was "more likely than not that the unlawful explanation is the actual explanation." Martin , 260 Or. App. at 471, 317 P.3d 408. The "unlawful explanation" in this case is a drug delivery scheme between the passenger and defendant, evidence of which would more likely than not be located in defendant's vehicle. Lutu at that point had probable cause to search defendant's vehicle. The trial court did not err in denying defendant's motion to suppress.
Affirmed.

Although we need not reach it in this case, we note that defendant also argues in the alternative that the automobile exception should be abandoned, an argument that would require the Supreme Court to overrule its own cases. See State v. Andersen , 361 Or. 187, 200, 390 P.3d 992 (2017) (declining to overrule automobile exception in all cases).