

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00327-CR

BERNARDO REYES                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Bernardo Reyes appeals his conviction for possession with intent to deliver more than four but less than 200 grams of cocaine. In two points, Appellant alleges that the trial court erred by (1) denying his motion to suppress and (2) allowing the prosecution to reopen its case after both sides had rested on the motion to suppress. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

**Procedural and Factual Background**

On May 19, 2010, a magistrate found probable cause to support a search warrant for the residence located at 3460 Oscar Avenue in Fort Worth, Texas, for cocaine powder and related evidence. The search warrant also authorized Appellant's arrest. On May 20, 2010, Fort Worth narcotics and SWAT officers executed the warrant. During the search, the officers arrested Appellant and seized approximately 113 grams of cocaine powder and other evidence.

Appellant moved to suppress the evidence, arguing that the search was not based on a valid warrant. At the suppression hearing, Appellant offered a certified copy of the search warrant and the supporting affidavit. After the parties agreed that everything seized during the search would be inadmissible if the warrant were found to be invalid, the defense rested. After reviewing the written motion to suppress, the prosecutor announced that he had "no further evidence regarding the warrant itself." The trial court then stated, "I understand that the specific issue is the date of May 2009," referring to the fact that the search warrant affidavit stated that the affiant, Officer A.J. Dominguez, had received information from a confidential informant regarding narcotics trafficking and sales occurring at 3460 Oscar in May 2010, and that he conducted surveillance of that location in May 2010; however, the affidavit also stated that a confidential informant bought cocaine powder from Appellant at that location during a controlled buy in May 2009.

Appellant argued (in addition to raising other issues) that the information regarding the controlled buy was stale because it occurred one year before the warrant issued. The State responded that the reference to May 18, 2009, was a typographical error, which should have read May 18, 2010. The trial court then recessed to research the issue.

Approximately thirty minutes later, the hearing reconvened. When the trial court asked if either party had anything to add, the prosecutor responded, "Nothing at this time from the State, Your Honor." Appellant argued that the State had failed to prove that the alleged typo was a clerical error. The State then asked to reopen its case to present more evidence.[2] Over Appellant's objection, the trial court allowed the State to reopen its case and recessed until the following day.

The next day, Officer Dominguez testified over Appellant's objection that the May 18, 2009 date in the affidavit was a typographical error, which should have read May 18, 2010. The trial court denied Appellant's motion to suppress, finding that the May 18, 2009 date was a typographical error and that the search warrant demonstrated probable cause. Appellant waived a jury, pleaded not

---

[2]The prosecutor stated that he "talked to [the officers] about the time of this surveillance, and they indicated to me 2010. Now, I had never -- I never specifically asked them, 'This May 2009 date, is that a typographical error,' but whenever I asked them on what dates they surveyed and performed surveillance of the house, they indicated to me that it was the month of May 2010."

3

guilty, and presented his case to the trial court.  The trial court found Appellant guilty and sentenced him to nine years and six months in prison.

**Article 36.02 of the Code of Criminal Procedure**

In his second point, Appellant asserts that the trial court erred by allowing the State to reopen its case after the close of argument in the pretrial motion to suppress.  In support of his argument, Appellant cites article 36.02 of the code of criminal procedure, which provides:  "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice."  Tex. Code Crim. Proc. Ann. art. 36.02 (West 2007).  Appellant asserts that, here, argument ended when the trial court recessed to conduct its own research.  Citing *Allman v. State*, Appellant asserts that the prohibition on evidence following argument is mandatory and applies whether the argument is made to a jury or to the court. 164 S.W.3d 717, 719 (Tex. App.—Austin 2005, no pet.).  Appellant's reliance on article 36.02 is misplaced.

As the court of criminal appeals has noted, article 36.02 appears in Chapter 36 of the code of criminal procedure, under "Trial and Its Incidents:  The Trial Before the Jury."  *See Black v. State*, 362 S.W.3d 626, 634 n.38 (Tex. Crim. App. 2012).  The court in *Black* explained that "[o]n the face of it, then, it would seem that the reach of Article 36.02 would be limited to regulating the admission of evidence proffered at the jury trial itself," adding:  "This is not to say, however,

that the Court has never suggested it might apply in principle, at least analogously, in other criminal-law contexts."[3] *Id.*

The court's holding in *Black*, however, demonstrates that article 36.02 does not apply to the instant situation. Black filed a pretrial motion to suppress the drugs seized from his person. *Id.* at 628. A suppression hearing was held after jury selection but before the trial started. *Id.* The trial court denied Black's motion. *Id.* at 629. During trial, the State asked the trial court to reopen the motion to suppress hearing to supplement the record. *Id.* Over Black's objection, the trial court allowed the State to elicit testimony outside the jury's presence. *Id.* On appeal, Black challenged the trial court's denial of his motion to suppress, and the court of appeals affirmed the trial court's ruling, relying in part on evidence adduced during the supplementation of the record on the motion to suppress. *Id.* at 629–30. In his motion for rehearing, Black maintained that the trial court erred by reopening the suppression evidence during trial. *Id.* at 630. The court of appeals denied the motion for rehearing. *Id.* The court of criminal appeals granted Black's petition for discretionary review, and affirmed the court of appeals. *Id.* at 630, 638. Specifically, the court of criminal appeals held:

> A trial court "may," but is not required to, resolve a motion to suppress evidence in a pretrial hearing under Article 28.01 of the

---

[3]The court mentioned as an example a case in which it gave a "cf." cite to article 36.02 in holding that a trial court did not abuse its discretion by allowing the State to reopen the evidence at a probation revocation. *Id.* (discussing *Stout v. State*, 500 S.W.2d 153, 154 (Tex. Crim. App. 1973)).

Code of Criminal Procedure. In essence, a pretrial motion to suppress evidence is "nothing more than a specialized objection to the admissibility of that evidence." A pretrial ruling on such a motion is interlocutory in nature. As such, it should be regarded as just as much the subject of reconsideration and revision as any other ruling on the admissibility of evidence under Rule 104 of the Texas Rules of Evidence, which a trial court may revisit at its discretion at any time during the course of a trial. To the extent that Article 36.02 may be said to circumscribe a trial court's authority to reopen a hearing on a motion [to] suppress, it should be construed . . . according to its [own] terms. By this reckoning, Article 36.02 restricts the trial court's discretion to reopen a hearing on a motion to suppress only to the extent that it prohibits further evidence *of any kind* once the parties have concluded their arguments of the "cause"—that is to say, the trial itself.

*Id.* at 633–34 (footnotes omitted) (in part quoting *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g)). The court of criminal appeals held, therefore, that "the trial court in this cause had the discretionary authority to reopen the hearing on the appellant's motion to suppress evidence, even mid-trial, to allow the State to present additional evidence in support of the trial court's initial, interlocutory ruling to deny the motion." *Id.* at 634–35.

Thus, the trial court in the instant case had the discretion to reopen the motion to suppress hearing. *See id.*; *Gilbert v. State*, 874 S.W.2d 290, 293 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding article 36.02 inapplicable to pretrial motion to suppress); *Montalvo v. State*, 846 S.W.2d 133, 136–38 (Tex. App.—Austin 1993, no pet.) ("The trial court had continuing jurisdiction over the case and was free to reconsider its own earlier suppression ruling."); *see also* *Lackey v. State*, 364 S.W.3d 837, 845 (Tex. Crim. App. 2012) ("[A] trial court may reexamine its ruling on a motion to suppress at any time prior to or during trial.").

6

Appellant also argues that even if the trial court had the necessary discretion, it abused that discretion when it granted the State's request to reopen its case. He asserts that the State did not establish that reopening and presenting testimony regarding the date "would 'materially change the case' in the State's favor" and that "it was not necessary to the due administration of justice to allow the State to reopen." In asserting these arguments, however, Appellant relies on language found in article 36.02. *See Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003) (concluding that under article 36.02 a "due administration of justice" means a judge should reopen the case if the evidence would materially change the case in the proponent's favor). Because we have held that article 36.02 is inapplicable to the instant pretrial suppression hearing, Appellant's argument is without merit.

Appellant also contends that the trial court abused its discretion by allowing Officer Dominguez to testify about matters that were beyond the scope of the four corners of the affidavit. We understand Appellant to argue that the trial court erred by allowing Officer Dominguez to testify that the May 18, 2009 date in the search warrant affidavit was a typographical error.

While a trial court is generally limited to the four corners of the affidavit supporting the warrant when ruling on a motion to suppress, *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011), technical defects of the warrant may be cured by explanatory testimony that shows the error was typographical. *See Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990); *Rougeau v. State*,

7

738 S.W.2d 651, 663 (Tex. Crim. App. 1987) (upholding warrant because testimony showed affidavit dated January 6, 1977, instead of January 6, 1978, was clearly typographical error), *cert. denied*, 485 U.S. 1029 (1988), *overruled on other grounds by Harris v. State*, 784 S.W.2d 5, 19 (Tex. Crim. App. 1989); *Lyons v. State*, 503 S.W.2d 254, 255–56 (Tex. Crim. App. 1973) (upholding warrant when undisputed police testimony showed that the police officer mistakenly typed "March" instead of "July" on the affidavit); *see Schornick v. State*, No. 02-10-00183-CR, 2010 WL 4570047, at *3 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (holding that trial court did not err in overruling motion to suppress when trooper testified that erroneous date on affidavit was a clerical error). Thus, we conclude that the trial court acted within its discretion in allowing and considering Officer Dominguez's testimony that the May 18, 2009 date in the search warrant affidavit was a typographical error. We overrule Appellant's second point.

### Motion to Suppress

In his first point, Appellant asserts that the trial court erred by denying Appellant's motion to suppress because the search warrant affidavit failed to establish probable cause.

A magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location. U.S. Const. amend. IV; Tex. Const. art. I, § 9; *see State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). "The test is whether a reasonable reading by the

8

magistrate would lead to the conclusion that the four corners of the affidavit provide a 'substantial basis' for issuing the warrant." *Duarte*, 389 S.W.3d at 354 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S. Ct. 2085, 2088 (1984)); *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Duarte*, 389 S.W.3d at 354 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)); *McLain*, 337 S.W.3d at 272).

When reviewing a magistrate's decision to issue a warrant, we apply a highly deferential standard in keeping with the constitutional preference for a warrant. *Rodriguez*, 232 S.W.3d at 59–60 ("[E]ven in close cases we give great deference to a magistrate's determination of probable cause to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement."). Further, we may not analyze the affidavit in a hyper-technical manner; rather, we must interpret the affidavit "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt, we defer to all reasonable inferences that the magistrate could have made." *McLain*, 337 S.W.3d at 271. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *Duarte*, 389 S.W.3d at 354–55.

In his search warrant affidavit, Officer Dominguez stated, in pertinent part, the following facts and circumstances supporting his application:

2. That in the month of May 2010 your affiant received information from a confidential informant who stated that narcotics trafficking and sales were taking place at 3460 Oscar Ave[.] where Bernardo Reyes, a Hispanic male, DOB ----, TX DL # ---- is dealing Cocaine Powder and is in possession of firearms.

3. That on May 18, 2009, your affiant and Officer JC Frias #3405 met with a reliable and confidential informant in regards to the complaint at 3460 Oscar Ave. Your Affiant searched the informant's person for contraband. No contraband was located. Your Affiant then provided this confidential informant with an amount of US Currency and directed him/her to go to 3460 Oscar Ave[.] and attempt to purchase a quantity of Cocaine Powder. Your affiant conducted surveillance and observed the confidential informant approach 3460 Oscar Ave. That while your affiant conducted surveillance your affiant was able to observe a Hispanic male walk out of the residence and me[e]t with the confidential informant. That the confidential informant remained for a short time and then met your affiant and handed your affiant a clear plastic baggie containing a white powdery substance that was purported to be Cocaine Powder. The confidential informant stated he/she purchased the Cocaine Powder at 3460 Oscar Ave[.] from Bernardo Reyes. That the confidential informant's person was again searched and no contraband was located.

4. That your affiant field tested the evidence using a Narco Pouch 904B field test kit and the evidence tested presumptive positive for Cocaine base. . . .

5. That in the month of May 2010 your affiant and Officer JC Frias #3405 conducted surveillance of 3460 Oscar Ave. That your affiant observed multiple vehicle[s] and foot traffic consistent with that of illegal narcotics sales. That your affiant observed a Hispanic male walk out of 3460 Oscar Ave[.] and look up and down the street acting as what appeared to be a "lookout." Lookouts are typically used to warn others of the presence of the Police.

. . . .

10

8.   That the reliable and confidential informant has assisted in multiple investigations in the past in which he/she has been able to accurately identify substances as controlled substances. Those same seized substances were tested by [an] authorized police department chemist and found to be controlled substances. That the confidential informant has provided information in the past that has been proved correct and reliable. . . .

Officer Dominguez signed the affidavit on May 19, 2010, and the magistrate issued the search warrant that same day.

We initially address Appellant's assertion that probable cause did not exist for the issuance of a warrant because the evidence was "stale"; that is, the supporting affidavit described a controlled buy on May 18, 2009, approximately one year before the warrant was issued on May 19, 2010. As previously set out above, the trial court properly allowed the State to reopen its case and present Officer Dominguez's testimony, including that he made a typographical error when he typed May 18, 2009, in the third paragraph of his affidavit and that he meant to enter May 18, 2010.

Appellant also asserts that the affiant's statements were conclusory and failed to provide sufficient facts such that a magistrate could find that probable cause existed. Appellant "invite[s] us to scrutinize discrete parts of the affidavit and find each deficient so that the affidavit as a whole cannot support the magistrate's probable-cause finding." *State v. Griggs*, 352 S.W.3d 297, 302 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). The court of criminal appeals has instructed, however, that "the focus is on the combined logical force of facts that are in the affidavit." *Duarte*, 389 S.W.3d at 354–55.

11

For instance, Appellant asserts that the second paragraph of the affidavit is conclusory and provides no basis for the informant's belief that Appellant was selling drugs, and it does not indicate how the informant learned of these alleged sales and when they occurred. Although a search warrant affidavit may not be based solely on hearsay or conclusory statements, a search warrant affidavit is not insufficient on those grounds so long as a substantial basis for crediting the hearsay exists or corroborating facts within the officer's knowledge exist. *See Gates*, 462 U.S. at 241–44, 103 S. Ct. at 2334–35; *Martin v. State*, No. 02-08-00128-CR, 2009 WL 2414294, at *2 (Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication).

Allegations that an informant has proven reliable on previous occasions may establish an informant's credibility.[4] *See Avery v. State*, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977); *see also Duarte*, 389 S.W.3d at 357 ("Confidential informants—even though culled from the 'criminal milieu'—may be considered

---

[4]When the affidavit is based on information provided by a confidential informant, one consideration is the informant's veracity, reliability, and basis of knowledge; these elements are not each independent requirements, however, but are closely intertwined issues that illuminate the overall question of whether there is probable cause. *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328; *State v. Walker*, 140 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A deficiency in the affidavit in one of these elements may be compensated for in determining the overall reliability of a tip by a strong showing as to the other by some other indicia of reliability. *See Gates*, 462 U.S. at 233, 103 S. Ct. at 2329–30 ("If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis of his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.").

reliable tipsters if they have a successful 'track record.'").  Here, Officer

Dominguez stated in paragraph eight that the "reliable and confidential informant

ha[d] assisted in multiple investigations," had accurately identified controlled

substances, and had provided correct and reliable information in the past.[5]

Appellant argues without supporting authority that this paragraph does not

explain how and when the confidential informant has been correct and reliable in

the past.  However, Officer Dominguez's general assertions of the informant's

past reliability are sufficient to establish the reliability of the informant in this case.

*See Walker*, 140 S.W.3d at 766; *see also Capistran v. State*, 759 S.W.2d 121,

128 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g); *Torres v. State*, 552

S.W.2d 821, 823 (Tex. Crim. App. 1977) ("[T]he affiant received information from

a credible and reliable person who had given information in the past regarding

narcotic traffic which has proven to be true and correct.").  Thus, the magistrate

could have reasonably inferred from the affidavit that this information sufficiently

established the informant's credibility and reliability, and in turn, that the

informant's tip was more likely to be true.  *See Dixon v. State*, 206 S.W.3d 613,

617 (Tex. Crim. App. 2006) (holding that informant's past reliability is an

---

[5]Although not explicitly stated, the magistrate reasonably could have inferred from the affidavit that only one informant was involved in this case.  *See Griggs*, 352 S.W.3d at 305; *Blake v. State*, 125 S.W.3d 717, 727 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding magistrate could have interpreted affidavit in common-sense and realistic manner to reasonably infer that only one informant was involved).  Appellant does not address whether there were one or two informants.

"important factor in establishing the credibility of the informant as it may be inferred that the police would not repeatedly act on information from one who has not [been] proven by experience to be reliable").

The credibility and reliability of an informant may also be supported by the affiant's reasonable corroboration of the informant's information. *Flores v. State*, 287 S.W.3d 307, 312 (Tex. App.—Austin 2009) (citing *Gates*, 462 U.S. at 244–46, 103 S. Ct. at 2335–36), *aff'd*, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010). In this regard, Officer Dominguez relied on his own and Officer Frias's observations during surveillance of the location throughout the month of May 2010, at which time he "observed multiple vehicle[s] and foot traffic consistent with that of illegal narcotics sales" and a male acting as what appeared to be a "lookout." Officer Dominguez also corroborated the informant's tip by conducting a controlled buy on May 18, 2010, and the informant confirmed that he bought cocaine powder from Appellant at 3460 Oscar. *See Griggs*, 352 S.W.3d at 305 ("The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant."). Thus, to the extent the informant's initial tip could be considered conclusory, the informant's established reliability, combined with the surveillance in May 2010 and the controlled buy on May 18, 2010—one day before Officer Dominguez sought to obtain the warrant—provided facts from which the magistrate could have reasonably inferred that the sale of cocaine powder was an ongoing enterprise and could have determined that the evidence sought would be at the residence

14

when the warrant issued.[6] *See Griggs*, 352 S.W.3d at 303–05 (holding that a tip from a "credible and reliable" informant coupled with a controlled buy outside of the alleged location is sufficient to support a probable-cause determination for a warrant to search that location).

Appellant argues that the affidavit does not provide evidence of drugs being inside the residence because the controlled buy occurred outside of the residence. We disagree. The original tip from a reliable informant was that "narcotics trafficking and sales were taking place at 3460 Oscar." The reliable informant went to 3460 Oscar and bought cocaine powder from Appellant, who walked out of the residence to sell drugs to the informant. Also, Officer Dominguez's surveillance of the residence revealed "multiple vehicle[s] and foot traffic consistent with that of illegal narcotics sales." Considering the facts in the affidavit along with reasonable inferences from those facts, we conclude that there was a fair probability that additional cocaine powder would be found inside the residence at 3460 Oscar. *See id.* at 303–04 ("[A]lthough the affidavit did not

---

[6]Appellant's two cases cited in support of his arguments are distinguishable and unpersuasive. *See Kennedy v. State*, 338 S.W.3d 84, 99 (Tex. App.—Austin 2011, no pet.) (holding that affidavit did not establish probable cause because affiant's statements were conclusory and provided nothing more than a summary of the affiant's and others' bare and unsubstantiated beliefs and suspicions); *Farhart v. State*, 337 S.W.3d 302, 304–10 (Tex. App.—Fort Worth 2011, pet. ref'd) (holding that in DWI case, affidavit did not establish probable cause for a blood-draw search warrant; it only described defendant's erratic driving, two pill bottles in the vehicle, and defendant's refusal to take field sobriety tests; "[t]oo many inferences must be drawn and too many facts must be read into the affidavit").

reflect that the informant had seen additional narcotics in the residence, the magistrate could have inferred that additional narcotics were in the residence from the facts provided," including that the informant told officer that crack cocaine was being stored and sold at a residence, officer and informant conducted a controlled buy of crack cocaine at the front of the residence, the illegal drugs sold to informant were retrieved from within the residence, and the defendant told informant he would be back at the residence later and that informant should come back also).

Appellant also asserts that "[t]here is no allegation, nor corroboration" that the person named in the original tip and the person who sold the informant cocaine powder during the controlled buy was the same person. Appellant also asserts that "[t]here is nothing indicating that [Appellant] is or will be at the residence on the date the warrant was requested. There is no information that [Appellant] is the owner, resident, or even an occupant of the house." Even if true, these arguments do not negate a finding of probable cause to issue a search warrant for the residence located at 3460 Oscar.[7] *See* Tex. Code Crim. Proc. Ann. art. 18.03 (West 2005) (allowing for a search warrant to order the arrest of a person, given the existence of probable cause); 40 George E. Dix & John M. Schmolesky, *Texas Practice Series*: *Criminal Practice & Procedure*

---

[7]Appellant does not assert that the magistrate did not have probable cause to issue a warrant for Appellant's arrest.

16

§ 11:7 (3d ed. 2011) ("The authorization to arrest [in a combined search and arrest warrant] is conceptually distinct from that [authority] to search.").

To the extent Appellant argues that the cocaine powder was not sufficiently linked to 3460 Oscar—that is, that the affidavit established that the narcotics would be found on Appellant and that the affidavit did not establish that Appellant would be at the house at the time the warrant was issued—we disagree. The original tip stated that "narcotics trafficking and sales were taking place at 3460 Oscar Ave[.] where [Appellant] . . . is dealing Cocaine Powder," and the informant purchased cocaine powder from Appellant, who walked out of the residence at 3460 Oscar to sell the cocaine powder to the informant. Further, Officer Dominguez's affidavit established that throughout the month of May 2010, he "observed multiple vehicle[s] and foot traffic consistent with that of illegal narcotics sales" at 3460 Oscar and that he observed an individual "walk out of 3460 Oscar Ave[.] and look up and down the street acting as what appeared to be a 'lookout.' Lookouts are typically used to warn others of the presence of the Police." *See Griggs*, 352 S.W.3d at 306 (holding that the warrant's supporting affidavit provided probable cause to believe that crack cocaine would be found in the residence and not simply on the suspected party described in the affidavit); *see also Loera v. State*, 03-11-00284-CR, 2012 WL 3156004, at *1–5 (Tex. App.—Austin Aug. 2, 2012, no pet.) (mem. op., not designated for publication) (holding that affidavit provided probable cause to search apartment for drugs,

even though affidavit focused mainly on person other than the defendant, and controlled buy did not occur in the apartment).

Appellant's first point is overruled.

## Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 4, 2013