

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00129-CR

_____

TIMOTHY EARL JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 42004-B

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Timothy Earl Johnson had some outstanding arrest warrants which Longview police served on him. The arresting officers confronted Johnson at his front door and were invited by him into the house. The police testified that once they were inside the house, they saw Johnson take actions which they perceived as being an attempt to conceal a gun which they believed had been in his possession. Johnson was convicted of unlawful possession of a firearm by a felon and was sentenced to seventeen years' confinement. *See* TEX. PENAL CODE ANN. § 46.04(a) (West 2011).[1]

On appeal, Johnson alleges several grounds for reversal. The points raised by Johnson regard his claims (1) that the trial court erred in admitting evidence of various statements he made at the time of his arrest, (2) that his trial counsel rendered ineffective assistance, (3) that there was impropriety of the content of certain arguments made by the State during the trial, and (4) that the legality of the sentencing phase of his trial was flawed (this last complaint being based on the fact that the trial court allowed the State to re-open the punishment evidence to prove its enhancement allegation). We overrule Johnson's points of error and affirm the trial court's judgment.

## I. Custodial Statements by Johnson

In his first point of error, Johnson argues that the trial court erred in allowing the admission into evidence of statements made by Johnson to police when Johnson was effectively in custody. Longview Detectives Lanie Smith and Terry Lofties were assigned to arrest Johnson

---

[1]The State alleged and proved an enhancement allegation. *See* TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2013).

on five misdemeanor warrants. They went to a house where they believed they would find Johnson and were met at the front door by him. Johnson indicated that he was aware of the existence of the arrest warrants and asked to be allowed to put on shoes and a shirt before accompanying them. The police officers consented and Smith followed Johnson into the house. Smith watched Johnson bend over between the coffee table and couch, then heard something strike the floor. When Johnson moved out of the way, Smith saw the handle of a pistol on the floor in the same area that he had heard the impact with the floor. Smith secured the weapon, and Johnson was allowed to dress before leaving the house. Although Johnson moved to suppress the statements made by Johnson during this encounter, the trial court allowed those statements into evidence.

We review a trial court's ruling on a motion to suppress for an abuse of discretion and overturn that ruling "only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply two different standards in reviewing such a ruling, "giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id*. at 922–23. In a determination that presents a mixed question of law and fact, appellate courts afford almost total deference to questions of historical fact that turn on credibility and demeanor but otherwise conduct a de novo review. *Herrera v. State*, 241 S.W.3d 520, 526–27 (Tex. Crim. App. 2007).

3

During the encounter concerning the serving of the misdemeanor warrants, Smith said that Johnson was not free to leave; Johnson had already said he was aware that the officers had warrants for him. We agree with the trial court's finding that Johnson was in custody. *See* TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2005); *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985).

"[U]nwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*."[2] *Oregon v. Elstad*, 470 U.S. 298, 307 (1985); *see also Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010) ("Failure to provide the warnings and obtain a waiver prior to custodial questioning generally requires exclusion of statements obtained.").[3] Custodial interrogation refers to "(1) express questioning and (2) 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Alford v. State*, 358 S.W.3d 647, 653 (Tex. Crim. App. 2012) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). That said, statements made voluntarily and not in response to custodial interrogation are admissible. *Arizona v. Mauro*, 481 U.S. 520, 525–26, 529 (1987); *Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment . . . ."); *Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984); *Hutchinson v. State*, 424 S.W.3d 164, 178 (Tex. App.—Texarkana 2014, no pet.).

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]*Carter* addressed situations where an unwarned statement is obtained and police subsequently administer the required warnings; in some situations, the unwarned statement may become admissible owing to the subsequent warning. Such is not the situation here.

## A.      Statement About Hiding Gun

When the State first questioned Smith during the suppression hearing, it asked no questions about statements made by Johnson. Johnson brought up the statements, and the State then asked redirect questions that pertained to those statements. At no point did Smith advise Johnson of his *Miranda*[4] rights. Smith stated that he "wasn't questioning about any crimes at the time." According to Smith, when he noticed the pistol on the floor, Johnson stated that

> he was afraid that if he picked up the gun, -- if -- if we saw him pick up the gun, then obviously we would have an issue with that. And -- and he -- he told us he was afraid he was going to get shot if he picked up the gun. And he didn't want to get beat or anything like that, so that's why he tried to hide the gun real quick.

Smith said this statement was not in response to a question; rather, Johnson "just told us that." Smith also said, "No, I did not question him -- question him specifically why he moved the gun." Apparently in contradiction of these statements, just a few minutes earlier, under cross-examination by Johnson's attorney, Smith indicated that he had questioned Johnson upon seeing the gun.

      [Defense counsel]  But you did question him when you saw the gun?

      [Detective Smith]  Sure.

"[T]he trial court is sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Smith gave apparently conflicting answers about whether Johnson's statement as quoted above was made in response to a question. The trial court made the following ruling:

---

[4]*Miranda*, 384 U.S. at 445, 469–72 (suspect's rights before custodial interrogation to be informed of constitutional right to remain silent, any statements could be used against suspect in court, and suspect's right to consult with lawyer).

> The statement of -- after the defendant put down the handgun, that he brought up on his own, that he didn't want to get shot or tackled or -- with the gun, he brought that up on his own; that was not the result of custodial interrogation. Therefore, that statement is admissible.

It is not irrefutably clear that Johnson's statement that he hid the gun because he was afraid of getting shot or "beat or anything like that," was uttered in response to a question from Smith.[5] The trial court was able to hear the exchange of questions and answers and evaluate the witness' answers and their demeanor while responding; we will defer to the trial court's determination that this statement was not the result of custodial interrogation.

### B. Statement Regarding Pill and Pistol

After Johnson's statement about moving the pistol, he and the officers engaged in "small talk," while Johnson made telephone calls to locate someone who could come lock up the house after he was removed from the house by the police. As Smith unloaded the gun, he noticed a pill. He asked Johnson, "Whose pill is this?" and Johnson answered, "Hey, that's not my gun, that's not my pill. You can throw that away." The trial court ruled on this statement: "The further statement that he added that, 'That's not my gun, that's not my pill,' that was not the result of custodial interrogation. That is admissible."

"The State may not use a defendant's statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless the State demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *White v. State*, 395 S.W.3d 828, 834 (Tex. App.—Fort Worth 2013, no pet.) (citing *Miranda*, 384 U.S. at 444). We

---

[5]Detective Lofties also said that Johnson said he hid the gun because he did not want to get hurt by the officers. Lofties was not questioned specifically and did not indicate whether this statement was in response to express questioning.

disagree with the trial court's determination that Johnson's disavowal of the ownership of both the pill and the gun was not the product of custodial interrogation. Smith initiated the exchange by asking Johnson the express question regarding the identity of the owner of the pill.[6] While there was no testimony whether the pill was eventually shown to be a prohibited controlled substance, that appears from the context to have been one of Smith's considerations. Also, Smith should have known this question was reasonably likely to elicit an incriminating response (even though it did not). Johnson's response that neither the gun nor the pill belonged to him were responses to custodial interrogation and should not have been admitted.

## C.  Statement on Front Porch

After Johnson's brother arrived to take charge of the house, Smith took Johnson outside and asked, "Look, I've got this gun and everything. Is there any more guns in the house or narcotics in the house, and would you mind me searching the house?" According to Smith, Johnson said that "there may be more firearms or -- or guns in the house; and that he does smoke weed, so there may be some weed in the house; and he does not want to incriminate himself. And he did not consent to search the house." The trial court's ruling on this statement was, "Asking for consent to search is not custodial interrogation. All the defendant had to say was no. His statement that there may be more guns or -- is admissible."

The trial court was correct, requesting consent to search is not a custodial interrogation. *Jones v. State*, 7 S.W.3d 172, 175 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). However,

---

[6]To be absolutely precise, Smith described this part of the encounter, "I'm unloading, taking the -- the clip out of the gun, the magazine out of the gun, that he stated -- because there was also a pill down here. I'm like, 'Whose pill is this?' And he stated, 'Hey, that's not my gun, that's not my pill. You can throw that away.'"

7

Smith asked two questions of Johnson, not one. The first question was whether there were any other weapons or drugs in the house, and the second question was whether Johnson would consent to a search of the house. The first question was reasonably likely to elicit incriminating information. When the *Jones* court reached the above conclusion, it pointed out that when the appellant signed the consent form, the act of signing "was not, in and of itself, an incriminating statement." *Id.* Incident to reaching its conclusion, the Houston First Court in *Jones* examined *United States v. McClellan*, 165 F.3d 535, 539–40 (7th Cir. 1999). The *McClellan* court said that "because the giving of such consent is not a self-incriminating statement," requesting consent to search does not constitute interrogation in the *Miranda* context. *Id.* at 544 (citing *United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996)).

In the case at bar, Smith did not restrict his question to ask for Johnson's consent to search the house; he also asked if any more weapons or narcotics were present in the house. Having already found a pistol and a pill of unknown substance (at least based on the record before us), Smith could reasonably anticipate that his question to Johnson was reasonably likely to elicit an incriminating response. Indeed, Smith's question did just that—Johnson told Smith there might be marihuana or weapons in the house, and Johnson admitted he liked to smoke marihuana. Smith's question about the presence of guns or drugs in the house, particularly after having completed the service of arrest warrants on Johnson, amounted to a custodial interrogation. The trial court abused its discretion to allow Johnson's responsive statement into evidence.

## II.     Harmless Error

The admission into evidence of a statement taken in violation of *Miranda* rights is constitutional error subject to harmless error review. *See* TEX. R. APP. P. 44.2(a); *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). When confronted with such an error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction or punishment. TEX. R. APP. P. 44.2(a); *Snowden v. State*, 353 S.W.3d 815, 818, 822 (Tex. Crim. App. 2011); *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). "If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt." *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001) (citing *Satterwhite v. Texas*, 486 U.S 249, 256–57 (1988)). Our focus is on the error itself in the context of the trial as a whole, and the purpose of that focus to determine the likelihood that the error "genuinely corrupted the fact-finding process." *Snowden*, 353 S.W.3d at 819; *see also Clay*, 240 S.W.3d at 904 (entire record must be considered in harmless error analysis). We consider the nature of the error, the extent it was emphasized by the State, the probable implications of the error, and the weight a juror would probably place on the error. *Snowden*, 353 S.W.3d at 822.

Despite Smith's somewhat inconsistent answers regarding whether he questioned Johnson, he clearly described a specific sequence of events: (1) he followed Johnson into the house, (2) Johnson bent over close to the floor near the coffee table and couch, (3) Smith heard the sound of a metallic object hitting the floor, and (4) when Johnson moved so he was no longer obstructing the view, Smith detected a pistol on the floor, beneath where Johnson had just bent

9

down.  At some point before leaving the residence, Smith also saw a shotgun beneath the couch. Johnson was the only person present in the house when the officers arrived.  As discussed above, the trial court was within its discretion to admit Johnson's statement that he hid the pistol when officers arrived.  The State did not emphasize the two statements that we have determined should not have been admitted into evidence.  This was a fairly straightforward case in which the jury had to answer a singular question:  was Johnson in possession of a firearm?[7]

The State placed no emphasis on Johnson's statement regarding his use of marihuana, his expression of concern that there might be other weapons in the house, or Johnson's disavowal of ownership of either the gun or the pill.  Based on the entire record, we determine beyond a reasonable doubt the trial court's error in admitting the non-Mirandized statements did not contribute to the conviction or judgment.

## III.    Prosecutor's Arguments

Johnson complains of several statements made by the State during closing arguments. Having lodged no objection to these statements before the trial court, we find any complaints were not preserved for our review.  *See* TEX. R. APP. P. 33.1.  However, Johnson argues that the State's statements were so egregious and improper as to amount to fundamental error.[8]  We will briefly address the State's comments of which Johnson makes appellate complaint, but find none of them, individually or in the aggregate, amount to fundamental error.

---

[7]Johnson does not challenge his status as a felon, or that the incident under review occurred within five years of his release from parole.

[8] We also point out that the Texas Court of Criminal Appeals has said that even where arguments are so egregious that any instruction to disregard would not have been curative, a defendant must nonetheless object at trial in order to raise an appellate complaint.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  In the interest of justice, though, we will briefly address Johnson's claims.

10

"Permissible jury argument falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement." *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

Johnson raises quite a number of complaints about comments made by the State on closing arguments, including assertions (1) that the State expressed a personal opinion as to Johnson's guilt, (2) that the attorney for the State injected new evidence (that the prosecutor had seen other things written or said by a witness for the defense) which was not otherwise presented at trial, (3) that the attorney for the State injected personal opinions as to the veracity of one of the defense witnesses, (4) that the State attempted to inject evidence into its argument that had not been adduced at trial when it posited that if the State had attempted to frame the defendant, it could have concocted an even more ironclad story than was presented, (5) that the State has accused the defendant of manufacturing evidence, and (6) that the State impermissibly characterized the defendant and a defense witness as being gang members and praised a testifying policeman as a "decent man."

In the context in which the above statements were made, they were each permissible under the circumstances and did not unduly prejudice Johnson's case. We note that Johnson made no objection to any of the statements made in closing argument, which he now raises on appeal. Even had some valid objection been raised and the objection sustained, one questions whether the nature of the comment would have been so egregious that a jury instruction would not have been curative. Even viewing these statements with the most jaundiced eye in an effort

11

to view them as being improper, they would have amounted to only the most minor of transgressions. Even so, the Texas Court of Criminal Appeals has said that even where things said during argument are so egregious that not even an instruction to disregard would cure the offense, "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). We also note that (despite the number of objections to argument raised on appeal concerning the jury argument by the State) there is "no authority holding that non-errors may in their cumulative effect cause error." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).

## IV.     No Showing of Ineffective Assistance of Counsel

Johnson claims his trial counsel provided deficient representation.[9] This requires a showing of both deficient performance and prejudice. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd). Ineffective assistance of counsel claims cannot "be built on retrospective speculation" but must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). First, Johnson must show that trial counsel's representation fell below an objective standard of reasonableness. *See Fox*, 175 S.W.3d at 485 (citing *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000)). We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, and was motivated by

---

[9] We review claims of ineffective assistance of counsel using the two-step analysis described by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1986).

sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (*Thompson*, 9 S.W.3d at 813–14).[10] Failure to satisfy either of the *Strickland* prongs is fatal to a claim of ineffective assistance. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).

Johnson alleges the following failures of trial counsel amounted to ineffective assistance: (1) failure to allege or move that the statements of Johnson upon his arrest did not comply with the requirements of Article 38.22 of the Texas Code of Criminal Procedure; (2) failure to object to the prosecutor's closing arguments (discussed above); (3) failure to object to admission of evidence Johnson refused to consent to search of the house; (4) failure to make a Rule 403[11] objection to evidence of Johnson's involvement in a gang; (5) failure to object to evidence of convictions of other gang members; (6) failure to object to photographs from Johnson's

---

[10]The record on direct appeal is frequently insufficiently developed to support a claim of ineffective assistance of counsel; the best way to make a sufficient record to support such a claim is by a hearing on a motion for new trial or a hearing on a petition for habeas corpus. *Jackson*, 877 S.W.2d at 772–73 (Baird, J., concurring). When facing a silent record as to defense counsel's strategy, an appellate court will not speculate as to counsel's tactics or reasons for taking or not taking certain actions. *Id*. at 771. Because the trial record is directed to the issues of guilt/innocence and punishment (or in this case, punishment alone), an additional record focused specifically on the conduct of counsel, such as a record of a hearing on a motion for new trial asserting ineffective assistance of counsel, is generally needed. *Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Only when "'counsel's ineffectiveness is so apparent from the record'" will an appellant prevail on direct appeal absent a hearing on a motion for new trial asserting an ineffective assistance of counsel claim. *Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) (quoting *Massaro v. United States*, 538 U.S. 500, 508 (2003)); *Kemp*, 892 S.W.2d at 115.

[11]Rule 403 of the Texas Rules of Evidence requires exclusion of relevant evidence where probative value is substantially outweighed by the danger of unfair prejudice, *inter alia*. TEX. R. EVID. 403.

Facebook internet account; and (7) failure to move to withdraw until the punishment phase of trial.

No motion for new trial was filed. We find nothing in the record attempting to secure testimony from trial counsel regarding his decisions and strategies at trial. We are highly deferential to trial counsel's performance and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and was motivated by sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jackson*, 877 S.W.2d at 771. "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz*, 93 S.W.3d at 88–89 (citing *Thompson*, 9 S.W.3d at 813–14).

Many of the bases for these claims of ineffective assistance have been addressed already. Most of the closing arguments we have found either were not improper or, if potentially improper, were not of such magnitude as to be harmful. Johnson's counsel did attempt to keep out evidence Johnson would not consent to a search of the house by way of his motion to suppress and arguments made in support of the motion. The gang membership was admitted to demonstrate possible witness bias in favor of the defendant, and the Facebook photographs were provided incident to that gang evidence. While objecting to Johnson's statements on the basis of Article 38.22 of the Texas Code of Criminal Procedure or to the gang evidence citing Rule 403 of the Texas Rules of Evidence may have been successful, such is only speculation.

Even assuming deficient performance, we find that Johnson cannot show a reasonable probability that the outcome of his trial would have been different but for the purported deficiencies he cites.[12] As summarized earlier, the State's burden of proof was neither complicated nor onerous. It only had to prove that Johnson, a convicted felon, had the care, custody, or control over a firearm. Johnson was in a house alone where he had been found by police officers. He was seen bending over toward the floor beside some furniture and a distinctive bump on the floor was heard as he bent. When Johnson moved in such a fashion that he was no longer blocking the view of the floor, a pistol was observed in the place where he had bent over and in the area where the bump was heard. A shotgun was in the same vicinity. Even if Johnson did not own the pistol, there was strong evidence that he exercised care, custody, or control over it. This is not even considering Johnson's statement to one of the police officers that he had moved the gun.[13]

## V. Substitution of Counsel

The trial court recessed the case for just over a month after the jury returned its verdict. When the court reconvened for sentencing, Johnson's retained counsel, Daryll Bennett, announced that Johnson expressed discontentment with his representation:

> Judge, I've talked to my client today and his family out here. And it seems like they are upset with me that I couldn't change the facts on this case. And I mean, they had nothing but praise for me during the trial, and now they show up today mad at me. He's accused me of a lot of things and all this stuff.

---

[12]*See Strickland*, 466 U.S. at 694.

[13]As pointed out above, at one point Smith said he asked about the gun; at another he said he did not. Even if that statement should have been excluded, Smith saw Johnson bend over and heard something hit the floor and, further, the pistol was where Johnson had bent over.

Johnson told the trial court he was unhappy that Bennett had not spoken to Johnson since the verdict. After saying he intended to hire another attorney, the trial court asked Johnson why he had not done so. Johnson replied,

> Oh, I didn't know -- I didn't know that we were going to talk about this today. I really -- I ain't had the chance to talk to him. I really wanted him to come and talk to me at least while I was in jail. I haven't even talked to him to even -- I tried to write, too; I had my family write, too. It was just I wanted to talk to him that he could talk to you or something, and let you know how I was feeling in there. But I haven't even talked to him. So I just feel like the whole -- I feel like the whole case -- the whole case has been soured.

The trial court denied Johnson's request.[14]

The United States Supreme Court has long recognized that an accused "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *see also Chandler v. Fretag*, 348 U.S. 3, 10 (1954). "However the right to obtain counsel of one's own choice is neither unqualified nor absolute." *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982) (citing *United States v. Barrentine*, 591 F.2d 1069 (5th Cir. 1979)); *Gandy v. Alabama*, 569 F.2d 1318 (5th Cir. 1978). Thus, that right must be balanced with a trial court's need for the prompt and efficient administration of justice.

Johnson relies on *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), in which the United States Supreme Court held that a defendant was denied his Sixth Amendment right to counsel where the trial court precluded him from being represented by the retained counsel of his choice. *Id.* Gonzalez-Lopez hired an attorney, but the trial court denied that attorney's *pro hac vice* motion to appear in the trial court; Gonzalez-Lopez then had to retain another

---

[14]The State told the trial court a detective witness was present, who was missing a training class to testify.

16

attorney. *Id.* at 142–43. The Court found the violation structural error, not susceptible to a harm analysis. *Id.* at 150, 152. The Court pointed out, however, that nothing in its holding "casts any doubt or places any qualification upon [its] previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them." *Id.* at 151. The Supreme Court "recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar." *Id.* at 152 (citations omitted).

We find important distinctions between the circumstance in *Gonzalez-Lopez* and in Johnson's situation. In *Gonzalez-Lopez*, the State conceded that the trial court had erroneously precluded the defendant's chosen attorney from representing him at trial. That attorney was hired and ready to participate at trial. Johnson, on the other hand, made only an ephemeral assertion of desire to retain another counsel and has provided no record of any concrete steps taken by him to achieve that result. Based on the record, it seems likely Johnson was unhappy with having been found guilty and had a month to dwell on the outcome of his trial. Other than blanket complaints about Bennett's lack of contact with him during the trial's interregnum, he offered no specific complaints about Bennett's representation. Bennett could not be said to have been unprepared for the punishment phase. After the hearing on the withdrawal motion, Bennett presented Johnson and four others as witnesses. A defendant cannot simply wait until the day of trial and then demand different counsel and still expect the result he seeks. *Robles v. State*, 577 S.W.2d 699, 704 (Tex. Crim. App. [Panel Op.] 1979) (citing *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976)) ("[A]n accused's right to represent himself or select his own counsel

17

cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.").

We find no error in the trial court's refusal to allow Johnson to hire a different attorney on the morning of the punishment trial.

## VI.    Re-Opening Punishment Evidence

Although the State had filed a pretrial notice of its intention to seek an enhanced punishment range because of Johnson's prior felony conviction as permitted by Section 12.42(a) of the Texas Penal Code, during the punishment phase of trial, the State failed to offer evidence of a prior felony conviction.[15]   After the defense had rested its case-in-chief on punishment, the trial court allowed the State to re-open and prove up a prior felony conviction.   Johnson complains that this ruling was error, citing Article 36.02 of the Texas Code of Criminal Procedure, which allows testimony to be introduced at any time before the conclusion of argument.  TEX. CODE CRIM. PROC. ANN. art. 36.02 (West 2007).

The punishment phase was tried to the court, not the jury.   As the Texas Court of Criminal Appeals has pointed out, Article 36.02 is found in Chapter 36 of the Code of Criminal Procedure entitled "The Trial Before the Jury."  TEX. CODE CRIM. PROC. ANN. arts. 36.01–.14 (West 2007), arts. 36.15–.33 (West 2006).  "On the face of it, then, it would seem that the reach of Article 36.02 would be limited to regulating the admission of evidence proffered at the jury trial itself."  *Black v. State*, 362 S.W.3d 626, 634 n.38 (Tex. Crim. App. 2012).  Johnson argues that Article 36.02 applies to nonjury proceedings as well as trials to juries and cites *Stout v. State*,

---

[15]The State alleged a different felony conviction for enhancement purposes than the jurisdictional felony alleged in the indictment.

18

500 S.W.2d 153 (Tex. Crim. App. 1973), where the trial court allowed the State to re-open evidence after the State closed its case in a probation revocation hearing. There was no indication in *Stout* whether argument had been concluded, but the court cited caselaw and Article 36.02 for the "well established" doctrine that the court may allow the introduction of testimony "at any time before the argument of the cause is concluded." *Id.* at 154 (citations omitted). The *Stout* court found no abuse of discretion. *Id.* In *Black*, after concluding that Article 36.02 seems to be limited to jury trials, the Texas Court of Criminal Appeals acknowledged its *Stout* decision, where the court "cited two cases that do not mention Article 36.02, but then gave a 'cf.' cite to Article 36.02," the notation "cf." "conventionally mean[ing] that the named authority 'supports a proposition different from the main proposition but sufficiently analogous to lend support.'" *Black*, 362 S.W.3d at 634, n. 38 (quoting THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION 55 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010)).

The *Black* court's reasoning makes sense—Article 36.02 is in the chapter controlling trials before a jury. The limitation on allowing testimony before the conclusion of arguments is germane to jury trials, where the parties' arguments are presented following the conclusion of evidence and the trial court's charge to the jury. It is presumed that the court ignores improper testimony; consequently, error, if any, was harmless. *Ozack v. State*, 646 S.W.2d 941, 943 (Tex. Crim. App. 1983). Likewise, it is unlikely in a trial or proceeding before the bench that the trial court would be confused by testimony adduced subsequent to closing arguments. We find that Article 36.02 is not controlling in nonjury proceedings. The trial court did not err to allow the

19

State to re-open evidence to offer proof on the prior felony conviction alleged for enhancement purposes.[16]

Even if there were error in the trial court's decision, it would be harmless. In its ruling, the trial court pointed out it had been aware "that this has been an enhanced case from the beginning." The court pointed out the presentence investigation report and Johnson's testimony at the punishment phase had established prior convictions. Johnson admitted having been sentenced to the penitentiary after an unsuccessful deferred adjudication community supervision for a possession case out of Longview. He admitted having been to the penitentiary for two offenses, one of which was proved up during the guilt/innocence phase of the trial for the jurisdictional element of the charged unlawful possession of firearm by a felon. Johnson identified that conviction as having been for a Harris County offense, which accords with the felony conviction alleged in the indictment. These pieces of testimony were not sufficient to prove the enhancement allegation, but support the trial court's reasoning that it was aware the case involved enhancement, and the admission of evidence of that conviction was anticipated.

---

[16]Johnson cites *Stout* and *Smith v. State*, 290 S.W.3d 368, 373–75 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd), which relied on *Stout* to find 36.02 applied to revocation proceedings, and concluded the trial court erred to allow testimony after the conclusion of arguments. *Black* post-dates *Smith* and was rendered by the State's highest criminal court. We find our holding is required by *Black*, and *Smith* is not applicable.

20

We find no reversible error. We overrule the appellant's points of error and affirm the trial court's judgment and sentence.

Bailey C. Moseley
Justice

Date Submitted: July 22, 2014
Date Decided: August 7, 2014

Do Not Publish

21